**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OPEN MRI AND IMAGING OF RP VESTIBULAR DIAGNOSTICS, P.A.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>HORIZON HEALTHCARE SERVICES, INC. d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,<br><br>Defendant/Counterclaim-Plaintiff.<br><br>AND<br><br>HORIZON HEALTHCARE SERVICES, INC. d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>OPEN MRI AND IMAGING OF ROCHELLE PARK, P.A.; VESTIBULA DIAGNOSTICS, P.A. D/B/A VESTIBULAR DIAGNOSTICS, P.A.; STEPHEN J. CONTE, D.O.; STEPHEN J. CONTE, JR. UNIVERSAL WELLNESS MEDICAL, INC.; LONGEVITY WELLNESS, P.A.; EUGENE DESIMONE, M.D.; SALVATORE CONTE, M.D.; RAYMOND REITER, M.D.; DONEY JAIN, M.D.; GEORGE HERMANN, M.D.; INTEGRATED WELLNESS MEDICINE, LLC; ST. IRENE REALTY CORP.; JOHN DOES 1-100; and ABC CORPS. 1-100,<br><br>Third-Party Counterclaim-Defendants. | Civil Action No.: 2:21-cv-10991-WJM-MF<br><br>**ANSWER TO COMPLAINT OF HORIZON HEALTHCARE SERVICES, INC. d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY**<br><br>**SECOND AMENDED COUNTERCLAIM OF HORIZON HEALTHCARE SERVICES, INC. d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY AGAINST OPEN MRI AND IMAGING OF RP VESTIBULAR DIAGNOSTICS, P.A.; OPEN MRI AND IMAGING OF ROCHELLE PARK, P.A.; VESTIBULA DIAGNOSTICS, P.A., D/B/A VESTIBULAR DIAGNOSTICS, P.A.; STEPHEN J. CONTE, D.O.; STEPHEN J. CONTE, JR. UNIVERSAL WELLNESS MEDICAL, INC.; LONGEVITY WELLNESS, P.A.; EUGENE DESIMONE, M.D.; SALVATORE CONTE, M.D.; RAYMOND REITER, M.D.; DONEY JAIN, M.D.; GEORGE HERMANN, M.D.; INTEGRATED WELLNESS MEDICINE, LLC; ST. IRENE REALTY CORP.; JOHN DOES 1-100; and ABC CORPS. 1-100** |

Defendant, Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), hereby answers Plaintiff, "Open MRI and Imaging of RP Vestibular Diagnostics, P.A.'s" ("Plaintiff"), Complaint and asserts affirmative defenses as follows:

**AS TO "JURISDICTION AND VENUE"**

1. The allegations of this paragraph constitute conclusions of law to which no response is required.

2. The allegations of this paragraph constitute conclusions of law to which no response is required.

**AS TO "PARTIES AND FACTUAL ALLEGATIONS"**

3-4. Horizon is presently without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. The Complaint merges two separate entities, Open MRI and Imaging of Rochelle Park, P.A. ("Open MRI") and Vestibula Diagnostics, P.A., d/b/a Vestibular Diagnostics, P.A.[1] ("Vestibula"), into a singularly named plaintiff "Open MRI and Imaging of RP Vestibular Diagnostics, P.A." Both Open MRI and Vestibula are domestic New Jersey professional associations and maintain their principal places of business at

[1] Although health care claims were submitted to Horizon under "Vestibular Diagnostics, P.A.", New Jersey corporate records reveal that the appropriate legal entity name is "Vestibula Diagnostics, P.A." which does business as "Vestibular Diagnostics, P.A."

251 Rochelle Avenue, Rochelle Park, New Jersey. Accordingly, it is unclear which entity the allegations in these paragraphs refer to.

5. Denied. Horizon is a not-for-profit health service corporation authorized under the New Jersey Health Services Corporation Act, N.J.S.A. 17:48E-1 et seq., with its principal place of business located at Three Penn Plaza East, Newark, New Jersey 07105.

6. The allegations of this paragraph constitute conclusions of law to which no response is required.

7. The allegations of this paragraph constitute conclusions of law to which no response is required.

8. The allegations of this paragraph constitute conclusions of law to which no response is required.

9. Denied as stated. Open MRI and Vestibula have submitted claims to Horizon with a fixed amount indicated as the “billed charge” for the services allegedly rendered to Horizon’s members. As detailed in Horizon’s Counterclaim below, Open MRI and Vestibula submitted claims to and received payment from Horizon for services not rendered and rendered unlawfully. In addition, Open MRI and Vestibula submitted claims to Horizon containing incorrect coding that was inconsistent with the services allegedly rendered.

10. Denied as stated. Open MRI and Vestibula have submitted claims to Horizon seeking payment of benefits pursuant to the terms, conditions, and limitations of a variety of different health benefits plans covering Horizon's members with some, but not all, of the plans being governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

11. Denied as stated. Open MRI and Vestibula have submitted claims to Horizon seeking payment of benefits pursuant to the terms, conditions, and limitations of a variety of different health benefits plans covering Horizon's members with some, but not all, of the plans being governed by ERISA. Further responding, Plaintiff's claims under ERISA fail as a matter of law as they relate to any Horizon member who received benefits pursuant to the State Health Benefits Plan or another governmental or religious entity.

12. The allegations of this paragraph reference written documents, the contents of which speak for themselves and any inconsistent characterizations are denied. Further responding, the allegations of this paragraph constitute conclusions of law to which no response is required.

13. The allegations of this paragraph constitute conclusions of law to which no response is required.

14. Denied in part; Admitted in part. Horizon admits that Open MRI and Vestibula submitted claims seeking payment of benefits pursuant to the terms,

conditions, and limitations of the health benefits plans covering Horizon's members. The remaining allegations in this paragraph reference written documents, the contents of which speak for themselves and any inconsistent characterizations are denied. Further responding, the allegations of this paragraph constitute conclusions of law to which no response is required.

15. Denied as stated. Horizon receives premium payments from fully-insured group plan sponsors, individuals who received coverage through the health insurance marketplace, or individuals who enrolled in a health benefits plan directly with Horizon. Horizon does not receive premium payments from self-funded plan sponsors but instead administers the terms, conditions, and limitations of a self-funded plan sponsor's health benefits plan in exchange for payment of an administrative fee. The remaining allegations in this paragraph constitute conclusions of law to which no response is required.

16. Horizon is presently without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

17. Denied.

18. Denied.

19. Denied as stated. As discussed in greater detail in Horizon's Counterclaim, upon its discovery of misrepresentations in claims submitted by Open MRI and Vestibula for payment, Horizon required that Open MRI and Vestibula

submit patients' corresponding medical records to substantiate the purported services rendered. Horizon denies the remaining allegations in this paragraph of the Complaint.

20. Horizon admits only that counsel for Open MRI and Vestibula attempted to negotiate with Horizon and its in-house counsel for additional payment. Further responding, the substance of those conversations are inadmissible for any purpose pursuant to Federal Rule of Evidence 408 and New Jersey Rule of Evidence 408, if applicable; therefore, no response is required.

21. Horizon admits only that Open MRI and Vestibula submitted medical records in support of some of the claims they submitted to Horizon for payment.

22. Horizon admits only that certain medical records were submitted to Horizon's Special Investigations Unit. Horizon lacks sufficient knowledge and information to confirm the truth of the number of records that Plaintiff contends were submitted.

23. To the extent the allegations in this paragraph of the Complaint reference written documents, the contents of those writings speak for themselves and any inconsistent characterizations are denied. To the extent the allegations in this paragraph of the Complaint reference communications between the parties in the context of attempted settlement negotiations, such communications are inadmissible

for any purpose pursuant to Federal Rule of Evidence 408 and New Jersey Rule of Evidence 408, if applicable; therefore, no response is required.

24. Admitted.

25. Denied.

26. Horizon is presently without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**AS TO "COUNT I**
**VIOLATION OF EMPLOYEE RETIREMENT INCOME SECURITY**
**ACT OF 1974 (ERISA) (29 U.S.C. SECTION 1132)"**

27. Horizon incorporates its responses to paragraphs 1 through 26 above, as if fully set forth herein.

28. The allegations in this paragraph of the Complaint constitute conclusions of law to which no response is required.

29. The allegations in this paragraph of the Complaint constitute conclusions of law to which no response is required.

**WHEREFORE**, Defendant Horizon respectfully requests this Court enter judgment in its favor and against Plaintiff as well as an award of attorneys' fees and costs and such other relief as this Court deems just and proper.

## AS TO "COUNT II DEMAND FOR AN ACCOUNTING"

30. Horizon incorporates its responses to paragraphs 1 through 29 above, as if fully set forth herein.

31. The allegations in this paragraph of the Complaint constitute conclusions of law to which no response is required.

**WHEREFORE**, Defendant Horizon respectfully requests this Court enter judgment in its favor and against Plaintiff as well as an award of attorneys' fees and costs and such other relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

1. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff lacks standing to assert them.

3. Plaintiff's claims are barred or limited, in whole or in part, and/or completely or expressly preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

4. Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff has failed to exhaust all administrative remedies.

5. Plaintiff's claims are barred, in whole or in part, by the terms, conditions, and exclusions of any applicable agreements, plans, and policies of insurance covering the patients whose claims are at issue.

6. Horizon did not violate any statutory or contractual duty to Plaintiff.

7. The Complaint is barred to the extent that Plaintiff is not a beneficiary of any contracts of insurance issued or administered by Horizon.

8. Plaintiff's claims are barred by anti-assignment provisions in the applicable health benefits plans.

9. Plaintiff's claims are barred, in whole or in part, by any applicable statute of limitations for each cause of action asserted in the Complaint.

10. Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

11. Plaintiff's claims are barred, in whole or in part, by Plaintiff's unclean hands.

12. Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel, laches, acquiescence, and/or consent.

13. Plaintiff's claims are barred, in whole or in part, to the extent the healthcare services or supplies it billed for are excessive, unwarranted, unreasonable, inappropriate, and/or not medically necessary.

14. Plaintiff's claims are barred, in whole or in part, because the services billed were not rendered or were rendered unlawfully.

15. Plaintiff's claims are barred, in whole or in part, to the extent it failed to satisfy any prerequisites, conditions, or obligations required under the applicable health benefit plans.

16. Plaintiff's claims are barred to the extent that Horizon acted reasonably and in good faith at all times.

17. Plaintiff's claims are barred to the extent that they engaged in the unlawful practice of medicine thereby rendering them ineligible to receive reimbursement from Horizon.

18. Plaintiff's claims are barred to the extent that Vestibula was not legally authorized to conduct business in the State of New Jersey by virtue of its suspension for failure to file annual reports and/or tax returns from January 16, 2012 up to and including December 8, 2020.

## SECOND AMENDED COUNTERCLAIM OF HORIZON HEALTHCARE SERVICES, INC. d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY AGAINST OPEN MRI AND IMAGING OF RP VESTIBULAR DIAGNOSTICS, P.A.; OPEN MRI AND IMAGING OF ROCHELLE PARK, P.A.; VESTIBULA DIAGNOSTICS, P.A.; STEPHEN J. CONTE, D.O.; STEPHEN J. CONTE, JR.; UNIVERSAL WELLNESS MEDICAL, INC.; LONGEVITY WELLNESS, P.A.; EUGENE DESIMONE, M.D.; SALVATORE CONTE, M.D.; RAYMOND REITER, M.D.; DONEY JAIN, M.D.; GEORGE HERMANN, M.D.; INTEGRATED WELLNESS MEDICINE, LLC; ST. IRENE REALTY CORP.; JOHN DOES 1-100; and ABC CORPS. 1-100

Counterclaimant, Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), files the following counterclaim against Plaintiff denominated as "Open MRI and Imaging of RP Vestibular Diagnostics, P.A." and Third-Party Counterclaim Defendants Open MRI and Imaging of Rochelle Park, P.A. ("Open MRI"), Vestibula Diagnostics, P.A. d/b/a Vestibular Diagnostics, P.A. ("Vestibula"),[2] Universal Wellness Medical, Inc. ("Universal"), Longevity Wellness, P.A. ("Longevity"), Integrated Wellness Medicine, LLC ("Integrated Wellness"), Stephen J. Conte, D.O. ("Dr. Stephen Conte Sr."), Stephen J. Conte, Jr. ("Mr. Conte Jr."), Eugene DeSimone, M.D. ("Dr. DeSimone"), Salvatore Conte, M.D. ("Dr. Salvatore Conte"), Raymond Reiter, M.D. ("Dr. Reiter"), Doney Jain, M.D. ("Dr. Jain"), George Hermann, M.D. ("Dr. Hermann") (collectively

[2] Horizon has named Open MRI and Vestibula as Third-Party Counterclaim-Defendants because the initial complaint filed by Plaintiff merged these two separate legal entities into one Plaintiff denominated as "Open MRI and Imaging of RP Vestibular Diagnostics, P.A."

"Counterclaim-Defendants"), and St. Irene Realty Corp. ("St. Irene"), and states as follows:

## I. INTRODUCTION

1. In March 2020, the United States and the world came to a screeching halt in the face of the novel COVID-19 virus. Leading the charge in the fight against this deadly virus were healthcare professionals who selflessly put the lives of others before their own. Some healthcare professionals and entities, however, saw in the pandemic an opportunity to take advantage of the chaos for their own personal financial gain to the detriment of the healthcare industry at large, including Horizon, its members, and plan sponsors. Counterclaim-Defendants were among those healthcare professionals and/or entities who fraudulently lined their own pockets during the pandemic. Horizon now seeks to hold them accountable for compensatory damages, punitive damages, treble damages, attorneys' fees, and costs, all of which are recoverable for such a blatant pattern of violations of New Jersey's Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30 ("IFPA"), and/or the common law.

2. From April 2020 through at least April 2021, Open MRI, Vestibula, and Universal operated medical practices that administered rapid COVID-19 tests to the public in a facility owned by St. Irene. From July 2020 through the present, Integrated Wellness operated a medical practice that administered rapid COVID-19

tests to the public in Clifton, New Jersey. The administration of a rapid COVID-19 test at Open MRI, Vestibula, Universal, and Integrated Wellness typically involved very brief encounters with Horizon members – they would have their temperature checked, answer a handful of "prescreen" questions, have a nasal or oral swab taken, and receive the test results. Overall, upon information and belief, the typical encounter for a Horizon member receiving a rapid COVID-19 test at Open MRI, Vestibula, Universal, and Integrated Wellness took just mere minutes.

3. Despite these brief patient encounters, Open MRI, Vestibula, Universal, and Integrated Wellness, with the knowledge and active participation of Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, Dr. Hermann and/or St. Irene, knowingly misrepresented on claims submitted to and paid by Horizon that they had performed moderate and, in many instances, high-level evaluation and management ("E&M") consultations for each and every patient who merely received a rapid COVID-19 test. These comprehensive E&M services were not rendered but that did not stop Counterclaim-Defendants from submitting fraudulent claims to and receiving payment from Horizon for these phantom services.

4. To further compound their fraud, Open MRI, Vestibula, and Universal submitted claims to Horizon knowingly misrepresenting that they had handled and/or conveyed patients' COVID-19 testing specimens for transfer from a

physicians' office to a laboratory. These claims were knowingly false. The rapid COVID-19 tests performed by Counterclaim-Defendants are "point of care" tests that do not require transmission of a specimen to a laboratory for testing.

5. Counterclaim-Defendants knowingly misrepresented on claims submitted to and paid by Horizon that they had performed comprehensive E&M and/or specimen handling services in conjunction with each administration of a rapid COVID-19 test on a Horizon member. These knowing misrepresentations resulted in the submission of false and fraudulent claims to Horizon typically seeking between $500 and $900 for merely rendering a rapid COVID-19 test. Such charges are particularly egregious when Vestibula and Dr. Stephen Conte Sr. apparently charged the City of Paterson between $200 and $225 for the same services.[3]

6. To legally render a rapid COVID-19 test, a healthcare professional must obtain either a Certificate of Waiver, Certificate of Compliance, or Certificate of Accreditation pursuant to the Clinical Laboratory Improvements Act of 1988 ("CLIA"). As a condition of remitting payment, Horizon relies on the claim form certifications of healthcare providers, like Counterclaim-Defendants, that they have complied with all licensing and credentialing requirements bearing upon the rendition of services, including the certificate requirements imposed by CLIA. From

---

[3] See *Paterson Times*, "Paterson agrees to pay nearly $215,000 for Covid-19 testing for uninsured residents," July 6, 2020, *available at* https://patersontimes.com/2020/07/06/paterson-agrees-to-pay-nearly-215000-for-covid-19-testing-for-uninsured-residents/.

April 2020 to September 2020, Open MRI and Vestibula were not appropriately licensed to render rapid COVID-19 tests as required by CLIA and its amendments but nonetheless performed the tests and submitted exaggerated and false claims to, and received payment from, Horizon for these unlawful services. Like Open MRI and Vestibula, when Universal was created it similarly lacked appropriate CLIA licensure but nonetheless submitted claims to and received payment from Horizon for these unlawful services.

7. To make matters worse, after Horizon filed this Counterclaim it learned for the first time that Vestibula is owned by and under the dominion and control of Dr. Stephen Conte Sr.'s son, Stephen J. Conte, Jr. ("Mr. Conte Jr."), an individual who is not licensed to practice medicine in the State of New Jersey or elsewhere. Mr. Conte Jr.'s ownership and control of Vestibula is unlawful pursuant to N.J.A.C. 13:35-6.16 and the New Jersey Professional Services Corporations Act, N.J.S.A. 14A:17-1 to -18. Accordingly, the submission of claims to and payment from Horizon for services rendered unlawfully from at least 2016 through the present is in violation of the IFPA, and Horizon is entitled to recover all amounts it paid to Vestibula during that time.

8. What's more, Vestibula is currently and actively dissipating its assets by transferring funds to Mr. Conte Jr. for his use in paying off creditors in his

pending personal bankruptcy proceeding. See In re Stephen J. Conte, Jr., No. 18-29278 (JKS) (D.N.J.) (the "Conte Jr. Bankruptcy Proceeding").

9. On September 24, 2021, Horizon filed its First Amended Counterclaim in this action seeking more than $4,000,000 in damages from Vestibula for, among other things, a pattern of violations of the IFPA. Six days later, Vestibula, at the express direction of Mr. Conte Jr., withdrew $3,658,000.00 from its bank account and deposited $1,829,000 each into bank accounts in the names of Universal and Longevity. These transfers were fraudulent and intended to frustrate, hinder, and delay Horizon's efforts to recover against Vestibula and its owners and operators.

10. The actions of Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann constitute a pattern of violations of the IFPA, the laws which govern the practice of medicine in the State of New Jersey, and the common law. As such, Horizon brings this action seeking compensatory damages in excess of $4,000,000 as well as the imposition of punitive damages, treble damages, attorneys' fees, and costs of suit and investigation pursuant to the IFPA and the common law. Horizon also seeks an equitable injunction from this Court preventing any further dissipation of Vestibula's assets.

## II. THE PARTIES

### A. Horizon

11. Horizon is a not-for-profit health service corporation organized under the New Jersey Health Services Corporation Act, N.J.S.A. 17:48E-1 to -68, with its principal place of business at Three Penn Plaza East, Newark, New Jersey. Horizon administers or insures health care benefits for subscribers pursuant to a variety of health care plans issued or administered in New Jersey, including individual policies, employer-sponsored benefit plans, and government-sponsored benefit plans.

12. Horizon is an insurance company within the meaning of the IFPA and paid health insurance claims as a result of and in reliance upon the insurance claims submitted, or caused to be submitted, by Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and/or Dr. Hermann.

### B. Counterclaim-Defendants

13. Open MRI is a domestic New Jersey professional association with its principal place of business located at 251 Rochelle Avenue, Rochelle Park, New Jersey. Open MRI's National Provider Identification ("NPI") number is 1619923679.

14. At all times material hereto, Dr. Stephen Conte Sr. served as the Registered Agent and President of Open MRI.

15. Vestibula is a domestic New Jersey professional association with the same principal place of business as Open MRI. Vestibula's NPI number is 1366671695. Vestibula submitted claims to Horizon under NPI number 1366671695 doing business as Vestibular Diagnostics. See Exhibit G.

16. From January 16, 2012 through December 8, 2020, Vestibula was not legally authorized to conduct business in the State of New Jersey because its corporate charter was revoked/suspended for failing to file annual reports and/or tax returns with the New Jersey Secretary of State and/or Division of Taxation.

17. Vestibula's June 4, 2009 Certificate of Incorporation identified "Dr. Stephen J. Conte" as its "director(s)" and "incorporator(s)."

18. In the Conte Jr. Bankruptcy Proceeding, however, Dr. Stephen J. Conte Sr. submitted, under oath, a sworn certification dated September 8, 2020, stating: "I originally also owned Vestibula Diagnostics, P.A. ("Vestibula"), and incorporated that business. This is why it has the same address as Open MRI. I transferred Vestibula to my son, Stephen J. Conte, Jr., who I understand now owns that business." (A true and accurate copy of Dr. Stephen Conte Sr.'s sworn Certification submitted to the Court in the Conte Jr. Bankruptcy Proceeding is attached hereto as Exhibit "A").

19. Mr. Conte Jr. is an individual with a home address located at 396 Farview Ave., Paramus, New Jersey 07652.

20. Mr. Conte Jr. conceded to the Court in the Conte Jr. Bankruptcy Proceeding that "he is the owner of Vestibula Diagnostics, P.A. (Vestibula). The Debtor [Mr. Conte Jr.] does not dispute his ownership interest in Vestibula."

21. In addition to the admissions made before the Bankruptcy Court, Mr. Conte Jr. has also submitted sworn statements to TD Bank in support of applications to open business bank accounts in Vestibula's name. In one such statement, Mr. Conte Jr. identified himself as Vestibula's "Sole Prop" with only him and his wife having authority to access the account.

22. In another such statement, Mr. Conte Jr. identified himself as Vestibula's "President" and certified that he was the "Individual with Control" over and the "100%" "Beneficial Owner" of Vestibula:

| I. Certification of Individual with Control (see page 4 for definition) | | |
|---|---|---|
| Individual First Name: Stephen | Middle Initial: J | Last Name: Conte |
| Street Address (no PO Boxes): 396 N Fairview Ave | | City: |
| State/Province: Paramus NJ | Zip/Postal Code: 07652 | Country: USA |
| Social Security Number (SSN) (US persons only): [redacted] | | Date of Birth: [redacted] |
| Title (CEO, President, etc.): President | | |
| Non-US persons, please complete the fields below | | |
| Primary ID Type (passport or other): | | Number: |
| Country: USA | Date of Issuance: | Exp. Date: |
| Is this Individual with Control also a Beneficial Owner? ☑ Yes ☐ No | If yes, what is the percentage of ownership? 100 % | |
| II. Certification of Beneficial Owner(s) (see page 4 for definition) | | |

23. Mr. Conte Jr. is not licensed to practice medicine in the State of New Jersey and his admitted ownership of Vestibula is unlawful pursuant to the "Professional practice structure" regulations governing the practice of medicine in New Jersey, N.J.A.C. 13:35-6.16, as well as New Jersey's Professional Services Corporations Act, N.J.S.A. 14A:17-1 to -18.

24. Universal is a domestic New Jersey corporation with the same principal place of business as Open MRI and Vestibula. Universal's NPI number is 1285248179.

25. At all times material hereto, Dr. Stephen Conte Sr. was a principal and member of Universal's First Board of Directors.

26. Longevity is a domestic New Jersey professional corporation with a principal place of business located in Paramus, New Jersey. Longevity's NPI number is 1477146058.

27. At all times material hereto, Dr. Stephen Conte Sr. was Longevity's incorporator and member of its First Board of Directors.

28. Dr. Stephen Conte Sr. is a Doctor of Osteopathic Medicine licensed to practice in the State of New Jersey with a home address located at 400 Farview Ave., Paramus, New Jersey.

29. Dr. Stephen Conte Sr.'s NPI number is 1750329900. Dr. Stephen Conte Sr. was identified as the "rendering provider" on false and fraudulent claims for services rendered to Horizon's members at Open MRI, Vestibula, and Universal.

30. At all times material hereto, Dr. Stephen Conte Sr. purportedly owned and/or operated Open MRI, Universal, Longevity, and St. Irene.

31. Dr. DeSimone is a Medical Doctor licensed to practice in the State of New Jersey with a home address located in Ocean Township, New Jersey. Dr. DeSimone's NPI number is 1427098268. Dr. DeSimone was identified as the "rendering provider" on false and fraudulent claims for services rendered to Horizon's members at Vestibula and Universal.

32. In 2015, Dr. DeSimone pleaded guilty in the United States District Court for the District of New Jersey to accepting approximately $48,000 in bribes from a medical laboratory in return for his referral of patient blood specimens for testing that was then billed to Medicare and private payors.[4] Dr. DeSimone was sentenced to 37 months of incarceration, followed by supervised release for one year, a $5,000 fine, and a civil forfeiture in excess of $265,000, among other conditions.

---

[4] See Department of Justice Press Release, "Two Doctors Each Sentenced to 37 Months in Prison for Taking Bribes in Test-Referrals Scheme with New Jersey Clinical Lab," May 5, 2015, *available at* https://www.justice.gov/usao-nj/pr/two-doctors-each-sentenced-37-months-prison-taking-bribes-test-referrals-scheme-new

Shortly thereafter, Dr. DeSimone's license to practice medicine was suspended for three years until 2018.

33. Dr. Salvatore Conte is a Medical Doctor licensed to practice in the State of New Jersey with a home address located in Totowa, New Jersey. Dr. Salvatore Conte's NPI number is 1174688493. Dr. Salvatore Conte was identified as the "rendering provider" on false and fraudulent claims for services rendered to Horizon's members at Vestibula, Universal, and Integrated Wellness.

34. In 2017, Dr. Salvatore Conte pleaded guilty[5] to four (4) counts of a ten (10) count indictment arising out of his acceptance of approximately $100,000 in bribes from the same medical laboratory as Dr. DeSimone in exchange for his referral of patient blood specimens for testing that were then billed to Medicare and private payors. Dr. Salvatore Conte pleaded guilty to: (1) conspiracy to violate the Federal Anti-Kickback Statute and the Travel Act and to commit honest services wire fraud by accepting bribes (Count I); (2) violation of the Federal Anti-Kickback Statute (Count II); (3) use of the mails and facilities and interstate commerce and interstate travel to promote, carry on and facilitate commercial bribery (Count V); and (4) honest services wire fraud (Count VIII). Upon being convicted, Dr.

---

[5] See Department of Justice Press Release, "Passaic County, New Jersey, Doctor Pleads Guilty in Connection with Test-Referral Scheme With New Jersey Clinical Lab," February 27, 2017, *available at* https://www.justice.gov/usao-nj/pr/passaic-county-new-jersey-doctor-pleads-guilty-connection-test-referral-scheme-new-jersey

Salvatore Conte was sentenced to three years of probation, including one year in a halfway house, and was ordered to pay a $50,000 fine.

35. Dr. Reiter is a Medical Doctor licensed to practice in the State of New Jersey with a home address located in Franklin Lakes, New Jersey. Dr. Reiter's NPI number is 1841447380. Dr. Reiter was identified as the "rendering provider" on false and fraudulent claims for services rendered to Horizon's members at Vestibula and Integrated Wellness.

36. Dr. Jain is a Medical Doctor licensed to practice in the State of New Jersey with a home address located in Morris Plains, New Jersey. Dr. Jain's NPI number is 1720484777. Dr. Jain was identified as the "rendering provider" on false and fraudulent claims for services rendered to Horizon's members at Vestibula and Universal.

37. Dr. Hermann is a medical doctor licensed to practice in the State of New Jersey with a home address located in Saddle Brook, New Jersey. Dr. Hermann's NPI number is 1619036738. Dr. Hermann was identified as the "rendering provider" on false and fraudulent claims for services rendered to Horizon's members at Vestibula and Integrated Wellness.

38. Integrated Wellness is a domestic New Jersey limited liability company with its principal place of business located in Clifton, New Jersey. Integrated

Wellness's NPI number is 1427661529. Integrated Wellness was first formed by Dr. Salvatore Conte and Dr. Reiter on July 27, 2020.

39. Upon information and belief, at all times material hereto, Dr. Salvatore Conte and Dr. Reiter are principals of Integrated Wellness.

40. St. Irene is a domestic New Jersey corporation with the same principal place of business as Dr. Stephen Conte Sr.'s home address in Paramus, New Jersey.

41. At all times material hereto, Dr. Stephen Conte Sr. owned and operated St. Irene. Dr. Stephen Conte Sr. served as St. Irene's Registered Agent with his wife, Patricia Conte, serving as the entity's President. St. Irene is the record owner of 251 Rochelle Avenue, the practice location of Open MRI, Vestibula, Universal, and Longevity, which served as the epicenter of the fraudulent conspiracy described herein.

## III. <u>JURISDICTION AND VENUE</u>

42. Plaintiff denominated as "Open MRI and Imaging of RP Vestibula Diagnostics, P.A." initially filed this action in the United States District Court for the District of New Jersey pursuant to Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"). In doing so, Plaintiff invoked this Court's original federal question jurisdiction pursuant to ERISA and 28 U.S.C. § 1331. Accordingly, this Court has subject matter jurisdiction over the primary dispute between Plaintiff and Horizon.

43. Horizon has filed a counterclaim against Plaintiff pursuant to Federal Rule of Civil Procedure 13.

44. The joinder of Counterclaim-Defendants Open MRI, Vestibula, Universal, Longevity, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, Dr. Hermann and St. Irene is appropriate pursuant to Federal Rules of Civil Procedure 13(h) and 20.

45. Horizon has named Open MRI and Vestibula as separate Counterclaim-Defendants because the initial Complaint filed by Plaintiff inexplicably merged these two separate legal entities into one Plaintiff denominated as "Open MRI and Imaging of RP Vestibular Diagnostics, P.A."

46. Horizon's Counterclaim against Plaintiff and Counterclaim-Defendants arises out of the same transaction, occurrence, or series of transactions or occurrences and there are common questions of law or fact that permeate throughout this matter. Indeed, the licensed Medical Doctors – Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann – who are named as Counterclaim-Defendants were identified as "rendering providers" at Open MRI, Vestibula, Universal, and/or Integrated Wellness. The epicenter of this scheme to defraud was the practice location of Open MRI, Vestibula, and Universal at 251 Rochelle Avenue in Rochelle Park, New Jersey, which is a building owned

by St. Irene, a realty holding corporation owned and operated by Dr. Stephen Conte Sr.

47. Since Plaintiff's initial action against Horizon arises out of this Court's original jurisdiction, this court possesses supplemental jurisdiction over Horizon's Counterclaim pursuant to 28 U.S.C. § 1367 because all of the claims are so related that they form part of the same case or controversy.

## IV. THE SCHEME TO DEFRAUD HORIZON

### A. The Health Care Benefits Provided by Horizon

48. Horizon administers and insures health care benefits for medically necessary services lawfully rendered by eligible providers to its subscribers pursuant to the terms of health benefit plans and policies of insurance issued to individuals and employers throughout New Jersey.

49. To submit a health insurance claim, healthcare providers, like Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Dr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann complete standard billing forms such as the HCFA/CMS 1500 or its electronic equivalent. These forms require providers to use numeric codes that describe the services for which the provider seeks payment. An example of a HCFA form submitted to Horizon by Vestibula is attached hereto as Exhibit "B."

50. Federal regulations designate the American Medical Association's Current Procedural Terminology ("CPT") and the CMS Healthcare Common Procedure Coding System ("HCPCS") codes, as maintained and distributed by the United States Department of Health and Human Services, as the standard codes to be used on these forms. 45 C.F.R. §§ 162.1002(a)(5), (b)(1), & (c)(1).

51. CPT and HCPCS codes are systems used to ensure that claims are processed in an efficient and consistent manner. These codes consist of descriptive terms to identify medical services and procedures furnished by healthcare providers. Healthcare providers, in turn, use these codes to identify the services for which they bill the patient or health insurer.

52. In adjudicating claims, Horizon relies on healthcare providers to input the CPT or HCPCS codes that most properly and accurately describe the services provided to an insured. Healthcare providers, like Counterclaim-Defendants, are aware of Horizon's claim adjudication process and intend for Horizon to rely upon the CPT and HCPCS codes contained within a claim submission to secure reimbursement pursuant to a Horizon member's health benefits plan. Horizon relies on the accuracy of such information and representations made by providers and/or members on submitted claim forms to determine whether to pay or deny a claim.

53. Indeed, Horizon requires that all claim submissions be certified as correct and complete and that the benefits being claimed are for charges actually incurred.

54. The IFPA also requires all insurance claim forms—including those used by Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann—to contain a statement that "clearly states in substance the following: 'Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.'" N.J.S.A. 17:33A-6(a).

55. In submitting a claim to Horizon or any other health insurer in New Jersey, a provider certifies that he or she is appropriately licensed and credentialed to legally render, and personally rendered, the services being billed.

56. As healthcare providers operating in the State of New Jersey, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Dr. DeSimone, and Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann are presumed to know the laws and regulations governing their practice.

### B. The COVID-19 Pandemic and the Federal Government's Response

57. In March 2020, the novel COVID-19 virus began rapidly spreading across the United States population, which led to mass shutdowns of the economy

and "stay-at-home" orders imposed by a number of State governments, including New Jersey.

58. In the beginning of the pandemic, there was a dire shortage of COVID-19 tests, testing supplies, testing facilities, and personal protective equipment, which inhibited efforts to identify those infected with the virus and prevent further transmission.

59. In response to the pandemic, on March 18, 2020, Congress passed the Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127. Section 6001 of the FFCRA required "group health plans" and "health insurance issuers" offering "group or individual health insurance coverage" to provide coverage for COVID-19 testing. The FFCRA also prohibited a "group health plan" or "health insurance issuer" from imposing any cost-sharing (i.e., deductibles, copayments, and coinsurance), prior authorization, or medical management requirements on COVID-19 testing services and any items or services furnished to an individual during health care provider office visits that "result in an order for or administration of an in vitro diagnostic product . . . but only to the extent such items and services relate to the furnishing or administration of such product or to the evaluation of such individual for purposes of determining the need of such individual for such product."

60. On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136. Section 3203 of the

CARES Act ensures that "group health plans" and "health insurance issuers" provide coverage for "any qualifying coronavirus preventive service," which means:

> An item, service, or immunization that is intended to prevent or mitigate coronavirus disease 2019 and that is—
>
> (A) An evidence-based item or service that has in effect a rating of "A" or "B" in the current recommendations of the United Sates Preventive Task Force; or
>
> (B) An immunization that has in effect a recommendation from the Advisory Committee on Immunization Practices of the Centers for Disease Control and Prevention with respect to the individual involved.

61. While the intent of the FFCRA and the CARES Act was to ensure insurance reimbursement for COVID-19 testing and related services, neither federal statute requires or contemplates a health insurer providing "coverage" for services that are not rendered or rendered unlawfully and then fraudulently billed.

62. Counterclaim-Defendants saw in the federal government's response to the pandemic an opportunity to fraudulently line their own pockets by misrepresenting the services rendered during a rapid COVID-19 testing encounter and billing for testing services rendered unlawfully. Using the pandemic as cover, Counterclaim-Defendants unlawfully exploited the legislation, Horizon, its members and plan sponsors, and the healthcare industry at large.

### C. Open MRI's and Vestibula's Commencement of Rapid COVID-19 Testing

63. At the beginning of the pandemic, there was a critical need for expanding the availability of COVID-19 tests.

64. Upon information and belief, beginning in April 2020, Open MRI and Vestibula began offering rapid COVID-19 tests to members of the public at their joint practice location of 251 Rochelle Avenue, Rochelle Park, New Jersey.

65. A typical patient encounter at Open MRI and/or Vestibula for a rapid COVID-19 test included the patient waiting in a line outside the practice location, having their temperature taken by a staff member, answering a few brief "prescreen" questions from a physician – including, upon information and belief, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and/or Dr. Hermann – about any COVID-19 symptoms and their medical history, receiving a nasal swab, and then receiving test results from an employee of Open MRI and/or Vestibula shortly after the sample was taken.

66. If a patient tested positive at Open MRI and/or Vestibula, they were then given a "guidance sheet" from the Centers for Disease Control.

67. Open MRI and/or Vestibula charged patients $35 for a rapid COVID-19 test and then also submitted false and fraudulent claims to Horizon for payment.

68. Numerous patients described their experience at Open MRI and/or Vestibula to Horizon and consistently stated that the "appointments" were very brief with little-to-no interaction with a licensed physician or healthcare provider. Indeed, several patients reported to Horizon that the actual process of having a specimen collected at Open MRI and/or Vestibula took no longer than 5 minutes.

69. In addition to the appointments at its practice location, from May 16 through May 22, 2020, Vestibula also ran COVID-19 rapid testing sites at several high schools located in Paterson, New Jersey, which the City of Paterson graciously arranged to provide testing to its residents, including those without health insurance.

70. Like the testing at Open MRI's and Vestibula's practice location, the Paterson high school sites followed the same protocol with brief patient encounters consisting of a temperature check, prescreen questionnaire, nasal or oral swab, and test result.

71. In billing the City of Paterson for the tests performed on uninsured residents, Vestibula charged $225 per person, which included a $50 "consultation fee" and a $175 "lab fee." At the time, members of Paterson's City Council viewed Vestibula's charges as excessive; however, due to the shortage of tests and testing

facilities, Paterson's City Council agreed to pay Vestibula $214,917 for seven (7) days of testing.[6]

72. While the charges to the City of Paterson were high, as described in greater detail below, Open MRI, Vestibula, and, later, Universal, with the knowledge and active participation of Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and/or Dr. Hermann, billed Horizon between $500 and $900 for the same exact services. Counterclaim-Defendants falsely inflated their charges by misrepresenting that, in conjunction with performing a rapid COVID-19 test, comprehensive E&M and/or specimen handling services were rendered when, in reality, such services were not rendered.

73. As further evidence of their brief patient encounters, in November 2020, Open MRI was cited by the State of New Jersey's Department of Health for failing to have adequate infection control procedures in place at its practice location where it was conducting COVID-19 testing.

74. On November 25, 2020, the Department of Health issued an "Emergency Closure Order" to Open MRI requiring it to close immediately because, among other reasons, staff members were not being appropriately screened for COVID-19, there were no social distancing policies in place, equipment used in

---

6 See *Paterson Times*, "Paterson agrees to pay nearly $215,000 for Covid-19 testing for uninsured residents," July 6, 2020, *available at* https://patersontimes.com/2020/07/06/paterson-agrees-to-pay-nearly-215000-for-covid-19-testing-for-uninsured-residents/.

performing tests was not being disinfected, and there were no COVID-19 policies and procedures.

75. The Emergency Closure Order confirms that a "doctor" performed the rapid COVID-19 specimen collection (i.e., nasal or oral swab) and then a staff member would "run" the test.

### D. Billing for Services Not Rendered By Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, and Dr. Jain, and Dr. Hermann.

#### 1. Billing for Rapid COVID-19 Tests

76. In April 2020, the American Medical Association approved for immediate use CPT code 86328 which describes the administration of the following rapid COVID-19 test: "Immunoassay for infectious agent antibody(ies), qualitative or semiquantitative, single-step method (e.g., reagent strip)[.]"

77. In July 2020, the American Medical Association approved for immediate use CPT code 87426 which describes the administration of the following rapid COVID-19 test: "Infectious agent antigen detection by immunoassay technique (e.g., enzyme immunoassay [EIA], enzyme-linked immunosorbent assay [ELISA], immunochemiluminometric assay [IMCA]) qualitative or semiquantitative, multiple-step method[.]"

78. The rapid COVID-19 tests described by CPTs 86328 and 87426 are considered "point of care" tests in that every component of the test can be performed

in the office of a CLIA-certified healthcare provider without the need to send the specimen to a laboratory.

79. To perform the rapid COVID-19 tests described by CPTs 86328 and/or 87426, a qualified healthcare professional merely had to take a nasal or oral swab from a patient and then perform the test according to the manufacturer's specifications.

80. Upon information and belief, the results from the rapid COVID-19 tests administered by Counterclaim-Defendants and described by CPTs 86328 and 87426 are typically available just a few minutes after administration of the test.

81. Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann submitted claims to Horizon seeking $250 in billed charges for each administration of a rapid COVID-19 test described by CPT 86328.

82. Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann submitted claims to Horizon seeking between $175 and $250 in billed charges for each administration of a rapid COVID-19 test described by CPT 87426.

### 2. Billing for Specimen Handling Services Not Rendered

83. For each encounter with a Horizon member, Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr.

Hermann did not only bill for the rapid COVID-19 tests described by CPTs 86328 or 87426. Instead, they also falsely and fraudulently billed for "specimen handling" services that were not rendered and would not be rendered.

84. CPT 99000 describes the "[h]andling and/or conveyance of specimen for transfer from the physician's office to a laboratory."

85. CPT 99001 describes "[h]andling and/or conveyance of specimen for transfer from the patient in other than an office to a laboratory [distance may be indicated]."

86. In the context of COVID-19 testing, when a healthcare provider collects a specimen for a PCR test, the specimen has to be transferred from the physician's office to a laboratory for testing.

87. The rapid COVID-19 tests performed by Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Raymond Reiter, Dr. Jain, and Dr. Hermann, however, are "point of care" tests that do not require transmittal of the patient's specimens for laboratory testing.

88. In addition to billing Horizon for the rapid COVID-19 tests administered to each Horizon member, for almost every patient encounter Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann nonetheless submitted claims to and received

payment from Horizon for services described by CPT 99000 and/or 99001 that were not rendered.

89. Indeed, upon information and belief, a majority of the claims submitted between April 2020 and the present included a charge for not only a rapid COVID-19 test but also for "specimen handling" services that were not rendered because the specimens collected from Horizon's members were not "transfer[red] from the physician's office to a laboratory."

90. Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann billed $150 for each "specimen handling" service that never occurred and was unnecessary for rapid COVID-19 test specimens.

91. Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, and Dr. Jain knowingly submitted claims to and received payment from Horizon for "specimen handling" services that did not occur and were collectively paid by Horizon in excess of $7,000 on these false and fraudulent claims.

### 3. Billing For Moderate- and High-Level E&Ms That Were Not Rendered During a Rapid COVID-19 Test.

92. On each claim submitted to Horizon for payment, either Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, or Dr. Hermann

were identified on the claim form as the "Rendering Provider" and certified that they had performed the services billed at Open MRI's/Vestibula's practice location.

93. Upon information and belief, on nearly every claim submitted for rapid COVID-19 tests administered to Horizon's members, Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann misrepresented that they had also performed moderate- and high-level evaluation and management ("E&M") services.

94. E&M services are described by CPT codes 99201 through 99205 for "new" patients and 99211 through 99215 for "established" patients.

95. The chart below provides the text of the E&M CPT codes 99201 through 99205, which inform the appropriate level for a healthcare provider to bill a payor such as Horizon when an E&M service is rendered on a new patient:

| **E&M CPT Codes for New Patients**[7] | |
|---|---|
| **<u>Code</u>** | **<u>Description</u>** |
| 99201 | Office or other outpatient visit for the evaluation and management of a new patient, which requires these 3 key components:<br>• A problem focused history;<br>• A problem focused examination;<br>• **Straightforward medical decision making**. |

[7] <u>See</u> American Medical Association, *CPT® 2020 Professional Edition*.

<table>
<tr><td></td><td>Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs.<br><br>Usually, the presenting problem(s) are self-limited or minor. Typically, 10 minutes are spent face-to-face with the patient and/or family.</td></tr>
<tr><td>99202</td><td>Office or other outpatient visit for the evaluation and management of a new patient, which requires these 3 key components:<ul><li>An expanded problem focused history;</li><li>An expanded problem focused examination;</li><li>Straightforward medical decision making.</li></ul>Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs.<br><br>Usually, the presenting problem(s) are of low to moderate severity. Typically, 20 minutes are spent face-to-face with the patient and/or family.</td></tr>
<tr><td>99203</td><td>Office or other outpatient visit for the evaluation and management of a new patient, which requires these 3 key components:<ul><li>A detailed history;</li><li>A detailed examination;</li><li>Medical decision making of low complexity.</li></ul>Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs.<br><br>Usually, the presenting problem(s) are of moderate severity. Typically, 30 minutes are spent face-to-face with the patient and/or family.</td></tr>
<tr><td>99204</td><td>Office or other outpatient visit for the evaluation and management of a new patient, which requires these 3 key components:<ul><li>A comprehensive history;</li><li>A comprehensive examination;</li><li>Medical decision making of moderate complexity.</li></ul></td></tr>
</table>

| | |
|---|---|
| | Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs.<br><br>Usually, the presenting problem(s) are of moderate to high severity. **Typically, 45 minutes are spent face-to-face with the patient and/or family.** |
| 99205 | Office or other outpatient visit for the evaluation and management of a new patient, which requires these 3 key components:<br>• A comprehensive history;<br>• A comprehensive examination;<br>• **Medical decision making of high complexity.**<br>Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs.<br><br>Usually, the presenting problem(s) are of moderate to high severity. **Typically, 60 minutes are spent face-to-face with the patient and/or family.** |

96. The chart below provides the text of the E&M CPT codes 99211 through 99215, which inform the appropriate level for a healthcare provider to bill a payor such as Horizon when an E&M service is rendered on an established patient:

| **E&M CPT Codes for Established Patients**[8] | |
|---|---|
| **Code** | **Description** |
| 99211 | Office or other outpatient visit for the evaluation and management of an established patient, that may not require the presence of a physician or other qualified health care professional. Usually, the |

8 See American Medical Association, *CPT® 2020 Professional Edition*.

| | |
|---|---|
| | presenting problem(s) are minimal. **Typically, 5 minutes are spent performing or supervising these services.** |
| 99212 | Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components:<br>• A problem focused history;<br>• A problem focused examination;<br>• Straightforward medical decision making<br>Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problems and the patient's and/or family's needs.<br>Usually, the presenting problem(s) are self limited or minor. **Typically, 10 minutes are spent face-to-face with the patient and/or family.** |
| 99213 | Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components:<br>• An expanded problem focused history;<br>• An expanded problem focused examination;<br>• Medical decision making of low complexity.<br>Counseling and coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs.<br>Usually, the presenting problem(s) are of low to moderate severity. **Typically, 15 minutes are spent face-to-face with the patient and/or family.** |
| 99214 | Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components:<br>• A detailed history;<br>• A detailed examination;<br>• Medical decision making of moderate complexity. |

| | |
|---|---|
| | Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs.<br><br>Usually, the presenting problem(s) are of moderate to high severity. **Typically, 25 minutes are spent face-to-face with the patient and/or family.** |
| 99215 | Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components:<br>• A comprehensive history;<br>• A comprehensive examination;<br>• Medical decision making of high complexity.<br><br>Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs.<br><br>Usually, the presenting problem(s) are of moderate to high severity. **Typically, 40 minutes are spent face-to-face with the patient and/or family.** |

97. Upon information and belief, nearly every time Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and/or Dr. Hermann submitted a claim to Horizon seeking payment for a rapid COVID-19 test described by CPTs 86328 or 87426, they also billed for higher-level E&M services described by either CPTs 99203, 99204, or 99205 for "new" patients or CPTs 99213, 99214, or 99215 for "established" patents.

98. Upon information and belief, each patient encounter at Open MRI/Vestibula for a rapid COVID-19 test involved a cursory "examination"

comprised of a handful of COVID-19 “prescreen” questions followed by collection of the swab, rapid testing, and furnishing of the results to the patient.

99. During the course of Horizon’s investigation, it obtained copies of claim forms, patient medical records, and COVID-19 testing results from Vestibula.

100. The documents Horizon received do not remotely support the billing of CPTs 99203, 99204, 99205, 99213, 99214, or 99215 when billed in conjunction with a rapid COVID-19 test described by CPTs 86328 or 87426.

101. By way of example only, below is a redacted snapshot of a one-page “COVID19 Encounter” form Vestibula submitted to Horizon in support of its claim seeking, among other amounts, $575.00 for performing a high-level E&M service described by CPT 99204, which requires approximately 45 minutes of “face-to-face” time spent with a patient along with a comprehensive history, a comprehensive medical exam, and medical decision making of moderate complexity:

**COVID19 ENCOUNTER** **VESTIBULAR DIAGNOSTICS, PA**

[redacted] Avenue, Rochelle P[redacted]hone: 201-291-8800

Patient Name: [redacted] DOB [redacted] Date: 11/09/2020

**HERE FOR: COVID19 PCR TEST RAPID COVID19 TEST ANTIBODY TEST**

1) Past Positive test ____ day/wk/m
2) Past Covid-19 Infection ____ date
3) Precaution
4) School requirement
5) Surgical Requirement /Dr
6) Work requirement
7) Travel requirement
8) Return from travel ________ date
9) Symptoms ____ days/wk/m
10) Primary exposure 3 day/wks (home/work/school/event/vac.)
11) Secondary exposure ____ day/wks (home/work/school/event/vac.)
12) Hospitalization for Covid-19 ____ days/wks/m
13) Positive Temp. Screen
14) School sports req.

Recent Surgery: NC

Medications:

Allergies: Y/N

**Past Medical History:** __ Denies __ CA __ Depression __ IBD
__ Dm __ HTN __ Hyperlipidemia/Kidney Dz __ Autoimmune Dz __ Anxiety, COPD
__ CAD __ Hyper/hypo-thyroidism __ Anemia __ Asthma __ Seasonal Allergies
__ Covid Pneumonia __ Ventilator +/- __ Hospitalization __ D/W/

Consent given for Covid19 test for the minor Mother__ Father__ Sign:______ Time:______

Family History: __ hypercholesterolemia __ thyroid __ hypercholesterolemia __ thyroid
Mother: __ DM __ COPD Kidney Dz __ Father: __ DM __ COPD KidneyDz __
__ Denies __ HTN __ CAD __ Denies __ HTN __ CAD

Social:
Tobacco Use: ____ If yes Duration ____ How many per day ____
Alcohol Use: ____ Recreational Drugs: ____

Age [redacted] Height 58 Weight 210 BMI: 32 Temp. 96 O2Sat 99 R.R. 62

| REVIEW OF SYSTEMS | WNL | ABNORMAL/COMMENT | Time | P.E. |
|---|---|---|---|---|
| Constitutional | | Fever, chills, fatigue, headache, tired, sweats | | Appears tired |
| Eyes | | Burning eyes, discharge, watery eyes, pain | | Injected, discharged |
| ENMT | | Sore-throat, congested, PND, ear pain | | Injected, Exudates |
| Neck | | Stiffness, swollen glands | | Stiffness |
| CV | | Palpitations/Chest pain/Resp. pain | | Palpitation, Rub/Murmur |
| Resp | | Cough productive/non-productive SOB | | Wheeze, Course BS |
| GI | | Diarrhea, nausea, vomiting, pain | | Tenderness Abdomen/Kidneys/Liver |
| Heme/Lymph | | Swollen glands | | Tender Glands |
| Musculoskeletal | | Muscle pain, achy | | Tender |
| Skin/Rash | | Skin rash, Dermatitis | | Mac/Papillary/Rash, Hives |
| Neuro | | Vertigo /Dizzy/ Seizure | | Tremors/Poor balance |
| Psych | | Confused, depressed, sleepy | | Sleepy/lethargic/confuse |
| Other | | Loss sense of taste and smell | | |
| Rapid Covid Test | | Negative ⊖ Positive ____ | | |

Patient given results and educated on COVID-19 symptoms/Positive Results/given handout ____

**Plan:**
Positive history, symptoms and P.E. suggestive of active COVID-19 infection. Ct-Scan of the Chest to aid diagnosis of COVID-19 infection. Patient agreed with plan.

Patient name: [redacted] Patient Signature ____________ Date: 11/09/2020

H.C.P. ____________ Date: 11/09/2020

102. For the above patient and date of service, Vestibula submitted a claim form, signed and certified as true by Dr. DeSimone, seeking $900 from Horizon for performing: (1) a rapid COVID-19 test described by CPT 87426 ($175 charge); (2) a high-level E&M described by CPT 99204 ($575 charge); and (3) "handling" the

patient's specimen for a transfer to a laboratory for additional testing that never occurred ($150 charge). (See Exhibit "B," which, on its face, confirms the impropriety of the specimen handling charge described by CPT 99000 because Vestibula and Dr. DeSimone responded "No" to the prompt in Box 20 asking if a specimen was being sent to an "outside lab?").

103. Upon information and belief, from April 2020 until the present, Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann submitted claims consistent with the above pattern with some minor variation between the otherwise-inappropriate E&M services that were billed.

104. From April 2020 through the present, Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann did not perform the moderate- and high-level E&M services described by CPTs 99203, 99204, 99205, 99213, 99214, and 99215 that were billed to and paid by Horizon and its self-insured plan sponsors in conjunction with the administration of a rapid COVID-19 test and, on many occasions, phantom "specimen handling" services.

105. Open MRI was paid in excess of $9,000 on claims misrepresenting the performance of moderate- and high-level E&M services in conjunction with the performance of rapid COVID-19 testing and, on many occasions, phantom and

unnecessary specimen handling services. Dr. Stephen Conte Sr. was identified by his NPI number as the "rendering provider" of these false and fraudulent services. (A true and accurate copy of Horizon's claims data, which is kept and maintained in the ordinary course of its business, is attached hereto as Exhibit "C" and depicts the claims submitted by Open MRI between April 23, 2020 and March 23, 2021, with Dr. Stephen Conte Sr. identified as the "Rendering Provider" by NPI number 1750329900).

106. Vestibula was paid in excess of $300,000 on claims misrepresenting the performance of moderate- and high-level E&M services in conjunction with the performance of rapid COVID-19 testing and, on many occasions, phantom and unnecessary specimen handling services. Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann were identified by their NPI numbers as the "rendering providers" of these false and fraudulent services. (A true and accurate copy of Horizon's claims data, which is kept and maintained in the ordinary course of its business, is attached hereto as Exhibit "D" and depicts the claims submitted by Vestibula between April 21, 2020 and May 29, 2021, with Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann identified as the "Rendering Provider" by NPI numbers 1750329900, 1427098268, 1174688493, 1841447380, 1720484777, and 1619036738, respectively).

107. The billing of moderate- and high-level E&Ms in conjunction with a rapid COVID-19 test is contrary to billing guidance published by the American Medical Association indicating that CPT 99211 – the lowest-level E&M code for established patients – is appropriate for merely collecting a patient swab for rapid COVID-19 testing, which is what occurred here.[9]

108. Collectively, Horizon paid Open MRI, Vestibula, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann in excess of $300,000 in reliance on their false and fraudulent claims misrepresenting the performance of moderate- and high-level E&M services.

109. In addition, upon information and belief, Horizon paid even more claims dollars based on false and fraudulent claims that misrepresented the performance of moderate and high-level E&M services as the sole service rendered during a COVID-19 rapid testing encounter and Horizon reserves the right to seek discovery into these claims and amend this Counterclaim, if necessary.

### 4. The Creation of Universal to Circumvent Horizon's Pre-Payment Review and Perpetuate Counterclaim-Defendants' Scheme to Defraud

110. Based upon Horizon's reasonable suspicion of healthcare fraud, on October 1, 2020, Horizon placed Vestibula on "pre-payment review" due to the

[9] See https://www.ama-assn.org/system/files/2020-05/cpt-reporting-covid-19-testing.pdf

aforementioned pattern of claims being submitted for services that were not rendered.

111. "Pre-payment review" required Vestibula to submit patients' medical records with claims for benefits so that Horizon could review and substantiate the coding of the services rendered and billed prior to adjudication of the claim.

112. On August 3, 2020, Dr. Stephen Conte Sr. incorporated Universal with the same principal place of business as Open MRI and Vestibula.

113. In a direct and blatant effort to circumvent Horizon's pre-payment review and perpetuate the scheme to defraud, Universal, with the knowledge and active participation of Dr. Stephen Conte Sr., Dr. DeSimone, and Dr. Jain, began submitting claims under its own tax identification number ("TIN") rather than Vestibula's TIN, even though the practice locations were the same.

114. Beginning on October 12, 2020 – only eleven days after institution of pre-payment review on Vestibula – Universal began submitting backdated and knowingly false and fraudulent claims to Horizon seeking payment for rapid COVID-19 tests in conjunction with specimen handling and moderate- and high-level E&M services that, contrary to the certified claim submissions, were not rendered by Dr. Stephen Conte Sr., Dr. DeSimone, or Dr. Jain.

115. After Horizon caught on to Universal's scheme and placed it on pre-payment review, Universal, with the knowledge and active participation of at least

Dr. DeSimone, obtained a different TIN and began submitting claims under it in a further effort to perpetuate the scheme to defraud. Although the TIN was different, the name of the entity – Universal – remained the same on claim submissions to Horizon.

116. Indeed, in an effort to extract even more money from Horizon through fraud, Universal submitted false and fraudulent claims to Horizon seeking payment for services on dates of service that occurred prior to Universal's incorporation.

117. By way of example only, on April 6, 2021, Universal submitted a backdated claim to Horizon seeking payment for a rapid COVID-19 test as well as specimen handling and represented that the services were rendered on July 5, 2020, nearly a month before Universal was incorporated.

118. Upon information and belief, Universal followed in the footsteps of Open MRI and Vestibula in submitting claims for rapid COVID-19 tests that misrepresented the performance of comprehensive E&M services and/or specimen handling services.

119. Collectively, Horizon paid Universal, Dr. Stephen Conte Sr., Dr. DeSimone, and Dr. Jain in excess of $75,000 on false and fraudulent claims misrepresenting the performance of specimen handling and moderate- and high-level E&M services. (A true and accurate copy of Horizon's claims data, which is kept and maintained in the ordinary course of its business, is attached hereto as

Exhibit "E" and depicts the claims submitted by Universal between dates of service July 5, 2020 and June 21, 2021, with Dr. Stephen Conte Sr., Dr. DeSimone, and Dr. Jain identified as the "Rendering Provider" by NPI numbers 1750329900, 1427098268, and 1720484777, respectively).

#### 5. Billing For Rapid COVID-19 Tests Rendered Unlawfully

120. The rapid COVID-19 tests administered by Counterclaim-Defendants are not yet formally approved by the United States Food & Drug Administration ("FDA"). Instead, the FDA permitted "authorized laboratories" to utilize the rapid COVID-19 tests under "Emergency Use Authorizations" ("EUA"), which were granted by the FDA due to the public health emergency.

121. An "authorized laboratory" to perform rapid COVID-19 tests pursuant to an EUA must possess either a CLIA Certificate of Waiver, Certificate of Compliance, or Certificate of Accreditation in order to lawfully render and bill for the test.

122. By way of example only, the primary rapid COVID-19 test administered by Counterclaim-Defendants was the Sofia SARS Antigen FIA manufactured by Quidel Corporation. The Sofia SARS Antigen FIA Covid-19 test is considered a "rapid" test with results available almost instantaneously.

123. On May 8, 2020, the FDA granted an EUA for the Quidel-manufactured rapid COVID-19 test. In doing so, the FDA notified Quidel and the public that only "Authorized Laboratories" may perform the rapid COVID-19 tests. The FDA described "Authorized Laboratories" as:

> Laboratories certified under the Clinical Laboratory Improvement Amendments of 1988 (CLIA), 42 U.S.C. § 263a, that meet the requirements to perform high, moderate, or waived complexity tests. This test is authorized for use at the Point of Care (POC), i.e., in patient care settings operating under a CLIA Certificate of Waiver, Certificate of Compliance, or Certificate of Accreditation.[10]

124. In response to the New Jersey Department of Health's November 2020 "Emergency Closure Order" referenced above in Section IV.C., Open MRI filed a Verified Complaint and Order to Show Cause challenging the Order.

125. In Open MRI's Verified Complaint, Stephen Conte, Jr., Open MRI's "Administrator," certified under oath that the practice had "in place at all times a Comprehensive Laboratory Improvement Act ('CLIA') Certification permitting it to perform" rapid COVID-19 testing.

126. This sworn statement was false.

---

[10] See Letter from Food & Drug Administration to Quidel Corporation granting EUA to Sofia SARS Antigen FIA, available at https://www.fda.gov/media/137886/download.

127. Upon information and belief, from April 2020 through at least September 21, 2020, Open MRI and/or Vestibula were not appropriately credentialed to render rapid COVID-19 tests pursuant to CLIA.

128. Upon information and belief, from July 2020 through at least November 8, 2020, Universal was not appropriately credentialed to render rapid COVID-19 tests pursuant to CLIA.

129. Despite the lack of an appropriate CLIA certification and/or failure to comply with applicable CLIA requirements during the aforementioned time periods, Open MRI, Vestibula, and Universal nonetheless unlawfully performed rapid COVID-19 tests and billed Horizon, among other insurers, for these unlawful services.

130. In doing so, Open MRI, Vestibula, and Universal collectively identified Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann as the "Rendering Providers" of these unlawful services.

131. From April 2020 through at least September 21, 2020, Horizon paid Open MRI and/or Vestibula in excess of $60,000 for rapid COVID-19 tests that were rendered unlawfully. (See Exhibits "C" and "D").

132. From July 2020 through at least November 8, 2020, Horizon paid Universal in excess of $80,000 for rapid COVID-19 tests that were rendered unlawfully. (See Exhibit "E").

### 6. The Creation of Integrated Wellness to Perpetuate Counterclaim-Defendants' Scheme to Defraud

133. During the height of the pandemic and Counterclaim-Defendants' scheme to defraud, Dr. Salvatore Conte Sr. and Dr. Reiter saw an opportunity to perpetuate the scheme to defraud by creating another legal entity to render rapid COVID-19 tests in Clifton, New Jersey.

134. On July 27, 2020, Dr. Salvatore Conte Sr. and Dr. Reiter formed Integrated Wellness; however, the first rapid COVID-19 test that Integrated Wellness billed Horizon was not until October 6, 2020 – five days after Horizon placed Vestibula on "pre-payment review."

135. Integrated Wellness has a website – www.iwmmd.com – touting its rapid COVID-19 testing services. Among other services, Integrated Wellness' website explains that it offers "FDA approved COVID-19 testing for antigens. Receive your test results in as little as 15 minutes." Integrated Wellness' website further explains its offering of "drive-thru swabbing . . . from the comfort of your own car. Our dedicated staff will work to ensure your test is both quick and painless."

136. Beginning in October 2020, Integrated Wellness submitted claims to and received payment from Horizon for rapid COVID-19 tests described by CPTs

87426 and 86328 and allegedly rendered by Dr. Salvatore Conte Sr., Dr. Reiter, and Dr. Hermann.

137. In conjunction with these charges for rapid COVID-19 tests and in an effort to circumvent Horizon's pre-payment review on Vestibula, Integrated Wellness, like the other Counterclaim-Defendants, also submitted claims to and received payment from Horizon for phantom E&M consultations described by CPTs 99202, 99203, 99204, 99213, and 99214 that, contrary to the certified claim submissions, were not rendered by Dr. Salvatore Conte, Dr. Reiter, and/or Dr. Hermann.

138. Indeed, in an effort to extract even more money from Horizon through fraud, Dr. Salvatore Conte and Dr. Reiter submitted claims to Horizon representing that they had performed rapid COVID-19 tests and comprehensive E&M services on the same day at Open MRI's/Vestibula's practice location in Rochelle Park as well as Integrated Wellness's practice location in Clifton, New Jersey.

139. By way of example only, on November 9, 2020, Dr. Salvatore Conte and Dr. Reiter collectively submitted claims to Horizon representing themselves as the "rendering providers" of rapid COVID-19 tests as well as comprehensive E&M consultations and phantom specimen handling services that were not rendered on seven (7) Horizon members at Vestibula's location in Rochelle Park.

140. Also on November 9, 2020, however, Dr. Salvatore Conte and Dr. Reiter collectively submitted claims to Horizon representing themselves as the "rendering providers" of rapid COVID-19 tests as well comprehensive E&M consultations that were not rendered on twenty-four (24) additional Horizon members at Integrated Wellness's location in Clifton, New Jersey.

141. Upon information and belief, Integrated Wellness followed in the footsteps of Open MRI, Vestibula, and Universal in submitting claims for rapid COVID-19 tests that misrepresented the performance of comprehensive E&M services.

142. From October 2020 through at least June 2021, Horizon paid Integrated Wellness, Dr. Salvatore Conte, Dr. Reiter, and Dr. Hermann in excess of $200,000 for E&M services described by CPTs 99202, 99203, 99204, 99213, and 99214 that were not rendered. (A true and accurate copy of Horizon's claims data, which is kept and maintained in the ordinary course of its business, is attached hereto as Exhibit "F" and depicts the claims submitted by Integrated Wellness between dates of service October 6, 2020 and June 22, 2021, with Dr. Salvatore Conte, Dr. Reiter, and Dr. Hermann identified as the "Rendering Provider" by NPI numbers 1174688493, 1841447380, and 1619036738, respectively).

**E. Vestibula's and Mr. Conte Jr.'s Unlawful Practice of Medicine.**

143. After Horizon filed its Counterclaim in this matter, on or about September 1, 2021, Horizon's counsel received a letter from Dr. Hermann which asserted, among other things, that Mr. Conte Jr. was the owner of Vestibula. (See Dkt. Ent. 27).

144. Accordingly, upon investigation of Dr. Hermann's assertions, Horizon discovered for the first time that, contrary to the publicly-available corporate documents, Vestibula is not currently owned or controlled by Dr. Stephen Conte Sr.

145. Rather, Vestibula is indeed owned by and under the dominion and control of Mr. Conte Jr.

**1. Mr. Conte Jr.'s Bankruptcy Proceeding**

146. On September 28, 2018, Mr. Conte Jr. filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the District of New Jersey. See In re Stephen Conte, Jr., No. 18-29278 (JKS) (D.N.J.). Subsequently, Mr. Conte Jr. moved the Court to convert his bankruptcy petition to one arising under Chapter 11 of the bankruptcy code.

147. On February 28, 2020, Mr. Conte Jr. filed his "Original Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing Chapter 11

Plan of Reorganization Proposed by Debtors" (the "First Disclosure Statement") (See Br. Dkt. Ent. 83 at 7).[11]

148. In the First Disclosure Statement, Mr. Conte Jr. represented that "everything stated in the Disclosure Statement is true to [Mr. Conte Jr.'s] best knowledge." See In re Stephen Conte, Jr., No. 18-29278 (JKS) (D.N.J.) (See B.R. Dkt. Ent. 83 at 8).

149. The First Disclosure Statement further represented to the bankruptcy court that Mr. Conte Jr. "is employed by the companies he owns and operates, known as Vestibula Diagnostics P.A." and that his Chapter 11 plan would be "funded by the Debtor's [Mr. Conte, Jr.'s] postpetition and post-confirmation income, and contributions by the Debtor's companies Vestibula Diagnostics PA[.]" (Id.).

150. Mr. Conte Jr. represented to the bankruptcy court in the First Disclosure Statement that he owned $300,000 in "shares/interests" of Vestibula. (Id. at 27).

151. Accordingly, Mr. Conte Jr. proposed, in Exhibit A of the First Disclosure Statement, a "projected monthly budget" of $54,500 from "Vestibula Diagnostics" to fund his Chapter 11 bankruptcy plan. (Id. at Exh. A).

152. On March 31, 2020, Mr. Conte Jr. filed a modified "Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing First

[11] References to "Br. Dkt. Ent." refer to specific docket entries from Mr. Conte Jr.'s Bankruptcy Proceeding.

Modified Chapter 11 Plan of Reorganization Proposed by Debtor" (the "Second Disclosure Statement"). (See id. at Br. Dkt. Ent. 96).

153. In the Second Disclosure Statement, Mr. Conte Jr. again represented the truth of the statements contained therein and again represented to the bankruptcy court he owned and operated, among other businesses, Vestibula. (Id. at pg. 7).

154. The Second Disclosure Statement similarly represented to the Court that Mr. Conte Jr.'s Chapter 11 Plan would be funded by, among other businesses, Vestibula and proposed a "projected monthly budget" of $54,500 from Vestibula to fund the plan. (Id. at pg. 8).

155. In reliance on Mr. Conte Jr.'s representations, the bankruptcy court approved, on April 8, 2020, the Conte Jr. Second Disclosure Statement. (See id. at Br. Dkt. Ent. 98).

156. In response to an adversary complaint filed by Allstate Insurance Company in the Conte Jr. Bankruptcy Proceeding, Dr. Stephen Conte Sr. submitted, under oath, a sworn certification dated September 11, 2020, and disclaiming any ownership interest in or control over the operations of Vestibula: "I originally also owned Vestibula Diagnostics, P.A. ("Vestibula"), and incorporated that business. This is why it has the same address as Open MRI. I transferred Vestibula to my son, Stephen J. Conte, Jr., who I understand now owns that business." (See id. at Br. Dkt. Ent. 193-2 at ¶¶ 8-9).

157. Similarly, on September 11, 2020, Mr. Conte Jr. represented to the bankruptcy court for at least the third time that "he is the owner of Vestibula Diagnostics, P.A. (Vestibula). The Debtor [Mr. Conte Jr.] does not dispute his ownership interest in Vestibula." (See id. at Br. Dkt. Ent. 193-5 at ¶ 2).

#### 2. Sworn Certifications from Co-Defendants Dr. Salvatore Conte and Dr. Reiter

158. On October 18, 2021, in this action, Horizon filed a motion for a preliminary injunction with temporary restraints preventing Vestibula from transferring, directly or indirectly, any funds to Mr. Conte Jr. (Dkt. Ent., 44.)

159. Horizon's motion was supported by sworn certifications from Dr. Salvatore Conte and Dr. Reiter. (Dkt Ent. 44-2, 44-3.)

160. Dr. Salvatore Conte certified that in October 2019 he was contacted by Mr. Conte Jr. regarding a position at Vestibula.

161. Dr. Salvatore Conte interviewed and negotiated with Mr. Conte Jr. regarding Dr. Salvatore Conte's employment at Vestibula. Ultimately, Dr. Salvatore Conte accepted an offer from Mr. Conte Jr. for a part-time position at Vestibula.

162. Dr. Salvatore Conte did not have any direct interactions with Dr. Stephen Conte Sr. and, instead, Mr. Conte Jr. oversaw all operations of Vestibula's practice. Indeed, Dr. Salvatore Conte certified that Dr. Stephen Conte Sr. was not involved at all in the day-to-day operations of Vestibula.

163. Mr. Conte Jr. was Dr. Salvatore Conte's sole point of contact regarding his employment at Vestibula.

164. Similarly, Dr. Reiter certified that he was contacted by Mr. Conte Jr. in March 2020 regarding a position at Vestibula.

165. Dr. Reiter interviewed and negotiated with Mr. Conte Jr. regarding Dr. Reiter's employment at Vestibula. Ultimately, Dr. Reiter accepted an offer from Mr. Conte Jr. for a part-time position at Vestibula.

166. Dr. Reiter did not have any direct interactions with Dr. Stephen Conte Sr. and, instead, Mr. Conte Jr. oversaw all operations of Vestibula's practice. Indeed, Dr. Reiter certified that Dr. Stephen Conte Sr. was not involved at all in the day-to-day operations of Vestibula.

**3. Vestibula's Subpoenaed Bank Accounts**

167. Through third-party discovery in the present action, Horizon has obtained financial records from TD Bank, where Vestibula maintains various accounts.

168. Through these records, Horizon has learned the following:

a. Mr. Conte Jr. opened all of the business checking and savings accounts for Vestibula.

b. In doing so, Mr. Conte Jr. represented himself to TD Bank as the "Sole Proprietor," "Officer," "President," and "Director" of Vestibula in support of various sworn applications to open business bank accounts in Vestibula's name. And for several of these accounts, Mr. Conte Jr.

certified that he was the "Individual with Control" over and the "Beneficial Owner" of Vestibula. (See, e.g., ¶ 22 supra).

c. On behalf of Vestibula, Mr. Conte Jr. is the signatory to these sworn applications.

d. On behalf of Vestibula, Mr. Conte Jr. submitted applications to TD Bank making only himself and his wife, Stavroula Eracleous, authorized users of Vestibula's bank accounts.

e. Mr. Conte Jr. and Ms. Eracleous maintain debit cards in their names to Vestibula's bank accounts.

f. Mr. Conte Jr. and Ms. Eracleous use Vestibula's bank accounts, which contain payments of health benefits from Horizon and other health insurers for professional services rendered, for personal purchases.

g. Consistent with the sworn certifications of Dr. Salvatore Conte and Dr. Reiter, Mr. Conte Jr. executes checks from Vestibula's bank accounts to pay Vestibula's employees and licensed physicians including Dr. Salvatore Conte, Dr. Reiter, Dr. Hermann, Dr. Jain, and Dr. Colin Pemberton.

h. As described in more detail in Section F below, in September 2021, Mr. Conte Jr. personally executed various withdrawal slips from Vestibula's bank accounts in excess of $4,000,000.

* * * *

169. Vestibula holds itself out to the public as a professional corporation providing "Healthcare Diagnostics" services.

170. Mr. Conte Jr. is not licensed to practice any form of medicine in the State of New Jersey or elsewhere.

171. Mr. Conte Jr.'s ownership and control of Vestibula is unlawful.

172. First, Mr. Conte Jr.'s ownership and control over Vestibula is contrary to the New Jersey Professional Service Corporation Act, N.J.S.A. 14A:17-1 to -18, which states that a professional corporation, like Vestibula, is prohibited from issuing "any of its shares to anyone other than an individual who is duly licensed or otherwise legally authorized to render the same professional service as that for which the corporation was incorporated." N.J.S.A. 14A:17-10(a).

173. Since Mr. Conte Jr. was never "duly licensed or otherwise legally authorized to render" the services provided by Vestibula, his ownership and control of the entity was unlawful.

174. In addition, pursuant to N.J.S.A. 14A:17-11, since Mr. Conte Jr. was "legally disqualified," by virtue of his non-licensure, "to render the same professional service as that for which" Vestibula was organized, Mr. Conte Jr. was required to "sever all employment" with Vestibula and was strictly prohibited from directly or indirectly sharing "in any earnings or profits realized by such corporation on account of professional services rendered[.]" Despite this prohibition and as articulated in Section F. below, Mr. Conte Jr. and his wife have unfettered access to all of Vestibula's finances and use its business bank accounts as their own personal bank accounts.

175. Second, Mr. Conte Jr.'s ownership and control over Vestibula is contrary to the Board of Medical Examiners' regulations, N.J.A.C. 13:35-6.16(f)(2),

prohibiting unlicensed individuals, like Mr. Conte Jr., from owning and operating a medical practice that employs physicians licensed by New Jersey's Board of Medical Examiners.

176. Since Vestibula employed, at a minimum, Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Hermann, Dr. Jain, and Dr. Reiter, it has engaged in the "Corporate Practice of Medicine" in violation of N.J.S.A. 14A:17-10(a) and N.J.A.C. 13:35-6.16(f)(2) and it was not eligible to receive payment from Horizon for medical services rendered unlawfully.

177. Since at least January 1, 2016, Vestibula submitted health insurance claims to and received payment from Horizon for services rendered unlawfully and in violation of the laws governing the practice of medicine in New Jersey.

178. In submitting health insurance claims to Horizon, Vestibula knowingly certified, among other things, that it is credentialed appropriately and has complied with any other significant qualifying requirements of law that bear upon the rendition of services.

179. Vestibula knowingly misrepresented to Horizon in claims that it was credentialed appropriately and had complied with any other significant qualifying requirements of law bearing upon its rendition of services.

180. In submitting health insurance claims to Horizon, Vestibula did not disclose or otherwise inform Horizon that it was owned by and under the dominion and control of an unlicensed individual, Mr. Conte Jr.

181. Horizon reasonably relied on the certified claims submitted by Vestibula in issuing payment to it.

182. As a result of Vestibula's unlawful conduct, Horizon paid in excess of $4,000,000 on claims for services rendered unlawfully. (A true and accurate copy of Horizon's claims data, which is kept and maintained in the ordinary course of its business, is attached hereto as Exhibit "G" and depicts all of the claims Vestibula submitted to Horizon from January 1, 2016 through the present).

**F. Vestibula's Unlawful Dissipation of Assets.**

183. In addition to Vestibula's unlawful practice of medicine, since Dr. Hermann's September 1, 2021 letter, Horizon has also discovered that Vestibula has engaged in a concerted effort to dissipate its ill-gotten gains by unlawfully transferring funds to Mr. Conte Jr., an insider, to pay his creditors in the Conte Jr. Bankruptcy Proceeding.

184. These transfers were effectuated in direct violation of N.J.S.A. 14A:17-11 since Mr. Conte Jr. was not eligible to lawfully participate or share in "any earnings or profits realized by" Vestibula.

185. On July 17, 2019, Vestibula transferred $5,000 to Mr. Conte Jr.'s attorney in the Bankruptcy Proceeding. (See Br. Dkt. Ent. 163-2 at 1).

186. On November 26, 2019, Vestibula transferred another $50,000 to Mr. Conte Jr. (See Br. Dkt. Ent. 79 at 8).

187. On February 24, 2020, Vestibula again transferred $50,000 to Mr. Conte Jr.'s attorney in the Bankruptcy Proceeding. (See Br. Dkt. Ent. 163-2 at 3).

188. On May 29, 2020, Vestibula transferred $200,000 to Mr. Conte Jr.'s attorney in the Bankruptcy Proceeding. (Id.).

189. On August 20, 2020, the bankruptcy court appointed a Chapter 11 Trustee to oversee Mr. Conte Jr.'s financial affairs. (See Br. Dkt. Ent. 168).

190. On May 8, 2021, Open MRI and Vestibula filed suit against Horizon seeking reimbursement for allegedly unpaid claims relating to rapid COVID-19 tests.

191. On June 30, 2021, Horizon's counsel provided notice to Open MRI's and Vestibula's counsel of record for this underlying lawsuit that Horizon was filing a Counterclaim against, among others, Open MRI and Vestibula asserting claims of health insurance fraud for the recovery of health care benefits that Horizon paid as a result of the fraudulent billing practices of Open MRI, Vestibula, and other providers.

192. Despite Vestibula's knowledge of Horizon's threatened legal action in this matter, it nonetheless transferred an additional $550,000 to Mr. Conte Jr. on July 22, 2021, a mere four (4) days before Horizon was due to file its Counterclaim, to fund the administrative expenses of his bankruptcy. (See Br. Dkt. Ent. 347 at 5).

193. On August 3, 2021, eight (8) days after Horizon filed its Counterclaim in this matter, the Chapter 11 Trustee overseeing Mr. Conte Jr.'s bankruptcy estate submitted its "plan of reorganization for debtor Stephen J. Conte, Jr." (See Br. Dkt. Ent. 330).

194. On August 10, 2021, the Chapter 11 Trustee overseeing Mr. Conte Jr.'s bankruptcy estate submitted a "projected monthly budget," which was based on Mr. Conte Jr.'s "good faith estimates as of August 1, 2021," that identified $75,500 in *monthly* income from Vestibula that could be utilized to fund his Chapter 11 Plan on a going-forward basis. (See Br. Dkt. Ent. 339).

195. On September 15, 2021, the Bankruptcy Court entered an Order confirming the Chapter 11 Trustee's Plan. (See Br. Dkt. Ent. 352).

196. According to Mr. Conte Jr.'s "projected monthly budget," if Vestibula is permitted to continue transferring $75,500 *per month* ($906,000 *per year*) to fund Mr. Conte Jr.'s bankruptcy, Vestibula will, upon information and belief, be unable to satisfy any judgment that Horizon obtains against it in this action. Moreover, if Vestibula is permitted to continue funding Mr. Conte Jr.'s bankruptcy, any judgment

Horizon obtains against Vestibula would be, upon information and belief, rendered meaningless and uncollectable.

197. In addition to the aforementioned transfers, Vestibula has also intentionally dissipated and/or transferred assets in the face of Horizon's Amended Counterclaim asserting the unlawful practice of medicine and seeking recovery of over $4 million that Horizon paid in reliance on false and fraudulent claims for services rendered unlawfully.

198. On September 24, 2021, in the present action, Horizon filed its Answer and Amended Counterclaim against, among others, Vestibula and Dr. Stephen Conte asserting that Vestibula was under the unlawful dominion and control of Mr. Conte Jr., unlawfully engaging in the corporate practice of medicine, and liable for violations of the IFPA and New Jersey's Uniform Voidable Transaction Act ("UVTA"), N.J.S.A. 25:2-10. (Dkt. Ent. 28.)

199. Five days later, on September 29, 2021, Horizon filed an Adversary Complaint in the Bankruptcy Proceedings against Mr. Conte Jr., Vestibula, Dr. Conte, and the court-appointed Chapter 11 Trustee asserting similar claims and seeking an injunction preventing Mr. Conte Jr. from transferring, or causing the transfer, directly or indirectly, of any further funds from Vestibula to himself or the Chapter 11 Trustee. (Br. Dkt. Ent. 366.)

200. The next day, September 30, 2021, Horizon filed its motion for a preliminary injunction with temporary restraints in the Bankruptcy Proceedings. (Br. Dkt., 21-01383, Ent. 4.)

201. On September 30, 2021, six days after Horizon filed its Amended Counterclaim, one day after Horizon filed its Adversary Complaint in the Bankruptcy Court, and the same day that Horizon filed its motion for a preliminary injunction in the bankruptcy court, Mr. Conte Jr. withdrew $3,658,000.00 from a Vestibula business TD Bank account:


CHECKING WITHDRAWAL
TD Bank
CLOSING? INITIAL HERE
NAME Vestibula
PLEASE PRINT
DATE 9/30/21
Three Million Six hundred fifty eight thousand 00/xx
WRITE AMOUNT IN FULL ON ABOVE LINE
SIGNATURE(S)
ACCT. # [redacted]7965
$ 3,658000.00
[redacted]
500

202. In an intentional effort to hinder, delay, and defraud Horizon's efforts to recover these funds, on the same day he withdrew $3,658,000.00 from Vestibula's bank account, Mr. Conte Jr. then deposited $1,890,000.00 in a business TD Bank account for Universal and $1,890,000.00 in a business TD Bank account for Longevity, thereby leaving approximately $20,000 in Vestibula's business bank account on September 30, 2021:


TD Bank
CHECKING DEPOSIT
DATE 9/30/21
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL
NAME Universal Wellness
PLEASE PRINT
ACCT. #
CASH / CURRENCY
TOTAL ITEMS
TOTAL FROM OTHER SIDE
SUBTOTAL
LESS CASH
$ 1,829,000.—
⑆5240⑈10 20⑆


TD Bank
CHECKING DEPOSIT
DATE 9/30/21
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL
NAME Longevity
PLEASE PRINT
ACCT. #
CASH / CURRENCY
TOTAL ITEMS
TOTAL FROM OTHER SIDE
SUBTOTAL
LESS CASH
$ 1,829,000.—
⑆5240⑈10 20⑆

203. Upon information and belief, like Vestibula's bank accounts, Mr. Conte Jr. has unfettered access to and control over the Longevity and Universal bank accounts in which the aforementioned monies were deposited.

204. On October 4, 2021, Mr. Conte Jr. filed, through counsel, an opposition to Horizon's motion for a preliminary injunction with temporary restraints in the Bankruptcy Proceedings.

205. In his opposition, Mr. Conte Jr. averred to the bankruptcy court that "as of the end of August 2021, Vestibula has over $4,000,000 in its account… As such, even if the Trustee is allowed to perform under the confirmed Chapter 11 plan, Horizon will be more than protected by the funds in Vestibula's accounts." (Br. Dkt., 21-01383, Ent. 14.)

206. In further support of his opposition, Mr. Conte Jr. submitted an outdated August 2021 bank statement from Vestibula's business TD Bank account, which was the same account from which Mr. Conte Jr. withdrew $3,658,000 three days prior.

207. The August 2021 bank statement was presented to the bankruptcy court for the purpose of persuading the Court that Vestibula was solvent, Horizon was protected in any judgment it may obtain against Vestibula, and, therefore, a preliminary injunction was not necessary.

208. These representations were false and misleading.

209. Vestibula's business TD Bank account did *not* have over $4,000,000 in its account

210. Mr. Conte Jr.'s opposition to Horizon's motion and the August 2021 bank statement were submitted with actual intent to hinder, delay, and defraud Horizon's efforts to recover the funds it paid to, among others, Vestibula and Mr. Conte Jr. for services rendered unlawfully.

211. On October 8, 2021, Horizon filed its motion for a preliminary injunction with temporary restraints before this Court seeking to enjoin Vestibula and its officers, agents, servants, employees, and attorneys from transferring, or causing the transfer, directly or indirectly, of any funds from Vestibula to Mr. Conte Jr., his attorneys, or the court-appointed Chapter 11 Trustee in the Bankruptcy Proceedings.

212. Dr. Stephen Conte Sr. – the purported "owner" of Vestibula, Universal, and Longevity – submitted an opposition to Horizon's motion for a preliminary injunction with temporary restraints on October 15, 2021. (See Dkt. Ent. 42).

213. In doing so, Dr. Stephen Conte Sr. provided a sworn declaration in which he testified that "Vestibula is the bankruptcy plan sponsor for Stephen Conte, Jr. It is not insolvent or near to insolvency. As of late 2021, Vestibula has approximately $4 million in its TD Bank account." (See Dkt. Ent. 42-1).

214. This representation, like Mr. Conte Jr.'s, was false and misleading.

215. At the time of signing this sworn declaration on October 15, Dr. Stephen Conte Sr., as Vestibula's purported "owner" and as the incorporator and sole member of the Board of Directors for both Universal and Longevity knew or should have known that Mr. Conte Jr. had withdrawn $3,658,000.00 from a Vestibula busines TD Bank account and deposited the funds into accounts for entities that Dr. Stephen Conte also allegedly "owns" – Universal and Longevity.

216. Under these circumstances, Dr. Stephen Conte Sr. either (i) knew and authorized Mr. Conte Jr.'s multi-million dollar withdrawals from Vestibula and then perjured himself in his October 15 sworn declaration to the Court, or (ii) Mr. Conte Jr. had full dominion and control over Vestibula's bank accounts and the professional fees it generated from its practice of medicine.

217. Accordingly, Dr. Stephen Conte Sr.'s sworn declaration in opposition to Horizon's motion for a preliminary injunction and temporary restraining Order was made with actual intent to hinder, delay, and defraud Horizon's efforts to recover from Vestibula.

## COUNT ONE

## INSURANCE FRAUD BY OPEN MRI, VESTIBULA, UNIVERSAL, INTEGRATED WELLNESS, DR. STEPHEN CONTE SR., MR. CONTE JR., DR. DESIMONE, DR. SALVATORE CONTE, DR. REITER, AND DR. JAIN

218. Horizon repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 217 of this Counterclaim.

219. Beginning in April 2020, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann entered into a scheme to defraud Horizon through the submission of false, misleading, and fraudulent insurance claims in violation of the IFPA, N.J.S.A. 17:33A-1 to -30.

220. Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann are persons or practitioners within the meaning of the IFPA and committed, participated in, solicited others to engage in, and knowingly assisted, conspired with, or urged others to commit the fraudulent and wrongful acts set forth herein.

221. At all times material hereto, Horizon was an insurance company within the meaning of the IFPA and paid insurance claims in reasonable reliance on and as a result of the false, misleading, and incomplete claims submitted by or caused to be submitted by Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen

Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann.

222. In violation of the IFPA, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann submitted or caused to be submitted health insurance claims to Horizon for services which were not rendered or were rendered unlawfully and which contained material misrepresentations concerning their, or their patients', entitlement to benefits.

223. In violation of the IFPA, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann knowingly and intentionally submitted or caused to be submitted written bills, invoices, statements, and health insurance claims for services which contained false and misleading information material to the claim.

224. In addition, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann intentionally concealed and failed to disclose material events, occurrences, and other information which affected their right to payment in violation of the IFPA.

225. Since at least April 2020, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann knowingly and intentionally submitted and/or caused to be submitted claims and received payment from Horizon for specimen handling services described by CPT 99000 and/or 99001 and E&M services described by CPTs 99202, 99203, 99204, 99205, 99212, 99213, 99214, or 99215 which were not rendered.

226. For dates of service from April 2020 through at least September 21, 2020, Open MRI, Vestibula, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann knowingly and intentionally submitted and/or caused to be submitted claims and received payment from Horizon for rapid COVID-19 tests described by CPTs 86328 and/or 87426 which were rendered unlawfully because neither Open MRI nor Vestibula possessed an appropriate CLIA certification.

227. For dates of service from July 2020 through at least November 8, 2020, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, and Dr. Jain knowingly and intentionally submitted and/or caused to be submitted claims and received payment from Horizon for rapid COVID-19 tests described by CPT 87426 and/or 86328 which were rendered unlawfully because Universal did not possess an appropriate CLIA certification.

228. In submitting or causing to be submitted insurance claims to Horizon for payment, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann acted knowingly and intended that Horizon rely on the information contained in the false health insurance claims in issuing payment on the claims.

229. In reasonable reliance on and as a result of the misrepresentation of the services being rendered on claims Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann submitted or caused to be submitted, Horizon paid in excess of $700,000 as a result of their material misrepresentations.

230. As a result of Open MRI's, Vestibula's, Universal's, Integrated Wellness's, Dr. Stephen Conte Sr.'s, Mr. Conte Jr.'s, Dr. DeSimone's, Dr. Salvatore Conte's, Dr. Reiter's, Dr. Jain's, and Dr. Hermann's scheme to defraud and pattern of violations of the IFPA, Horizon has suffered damages including, but not limited to, all amounts paid by Horizon as a result of the submission of, or causing others to submit, false and fraudulent claims for reimbursement, costs of investigation, costs of suit, and attorneys' fees, all of which are specifically recognized as compensatory damages under the IFPA. See N.J.S.A. 17:33A-7.

231. As a result of Open MRI's, Vestibula's, Universal's, Integrated Wellness's, Dr. Stephen Conte Sr.'s, Mr. Conte Jr.'s, Dr. DeSimone's, Dr. Salvatore

Conte's, Dr. Reiter's, Dr. Jain's, and Dr. Hermann's scheme to defraud and pattern of violations of the IFPA, Horizon is entitled to an award of treble damages under the IFPA. See N.J.S.A. 17:33A-7.

**WHEREFORE**, Horizon demands judgment in its favor and against Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann jointly and severally, for all its damages, including costs of suit, attorneys' fees, and costs of investigation, for treble damages under the IFPA, and for such other relief as the Court may determine.

## COUNT TWO

## INSURANCE FRAUD BY VESTIBULA AND MR. CONTE JR. FOR THE UNLAWFUL PRACTICE OF MEDICINE

232. Horizon repeats and incorporates herein by reference the allegations contained in paragraph 1 through 231 of this Counterclaim.

233. Vestibula is a domestic professional corporation that is owned by and under the dominion and control of Mr. Conte Jr., an individual who is not licensed to practice any form of medicine and who is prohibited from owning a medical practice pursuant to the laws governing the practice of medicine in the State of New Jersey.

234. Vestibula and Mr. Conte Jr. are persons or practitioners within the meaning of the IFPA and committed, participated in, solicited others to engage in, and knowingly assisted, conspired with, or urged others to commit the fraudulent and wrongful acts set forth herein.

235. At all times material hereto, Horizon was an insurance company within the meaning of the IFPA and paid insurance claims in reasonable reliance on and as a result of the false and misleading claims submitted by, or caused to be submitted by, Vestibula and Mr. Conte Jr.

236. From at least 2016 up to and including the present, Vestibula engaged in the unlawful practice of medicine in New Jersey because it was owned, operated, and controlled by Mr. Conte Jr., an individual who is not licensed to practice any form of medicine and who is prohibited from owning, operating, or controlling a medical practice pursuant to the laws governing the practice of medicine in the State of New Jersey. Vestibula and Mr. Conte Jr. further engaged in the unlawful practice of medicine through the employment of Dr. Stephen Conte Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann.

237. Despite its illegal practice structure, Vestibula knowingly and intentionally submitted claims to and received payment from Horizon for services unlawfully rendered on Horizon's members.

238. Vestibula and Mr. Conte Jr. knowingly and intentionally failed to disclose to Horizon the identity of its unlicensed owner and this information was material to the health insurance claims Vestibula and Mr. Conte Jr. submitted, or caused to be submitted, to Horizon for payment. If disclosed, Horizon would not have paid Vestibula and/or Mr. Conte Jr. for any of the services allegedly rendered to Horizon's members.

239. In reasonable reliance on and as a result of Vestibula's and Mr. Conte Jr.'s misrepresentation of Vestibula's eligibility to legally render the services billed in claims, Horizon paid in excess of $4,000,000 on false and fraudulent claims submitted, or caused to be submitted, by Vestibula and Mr. Conte Jr.

240. As a result of Vestibula's and Mr. Conte Jr.'s scheme to defraud and pattern of violations of the IFPA, Horizon has suffered damages including, but not limited to, all amounts paid by Horizon as a result of Vestibula's and Mr. Conte Jr.'s submission of, or causing others to submit, false and fraudulent claims for reimbursement, costs of investigation, costs of suit, and attorneys' fees, all of which are specifically recognized as compensatory damages under the IFPA. See N.J.S.A. 17:33A-7.

241. As a result of Vestibula's and Mr. Conte Jr.'s scheme to defraud and pattern of violations of the IFPA, Horizon is entitled to an award of treble damages under the IFPA. See N.J.S.A. 17:33A-7.

**WHEREFORE**, Horizon demands judgment in its favor and against Vestibula and Mr. Conte Jr. for all its damages, including costs of suit, attorneys' fees, and costs of investigation, for treble damages under the IFPA, and for such other relief as the Court may determine.

## COUNT THREE

## VIOLATIONS OF NEW JERSEY'S UNIFORM VOIDABLE TRANSACTION ACT AS TO VESTIBULA, MR. CONTE JR., UNIVERSAL, AND LONGEVITY

242. Horizon repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 241 of this Counterclaim.

243. New Jersey's Uniform Voidable Transaction Act, N.J.S.A. 25:2-10 to -36 ("UVTA") prevents debtors from defrauding creditors by placing assets beyond their reach by allowing a creditor to undo the wrongful transaction and/or seek an injunction from a Court of competent jurisdiction to preserve the status quo.

244. The UVTA, which applies to present and future creditors, states that "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with the actual intent to hinder, delay, or defraud any creditor of the debtor." N.J.S.A. 25:2-25(a)(1).

245. Vestibula is a "debtor," as that term is defined in the UVTA.

246. Universal is a "debtor" and "transferee" as those terms are defined in the UVTA.

247. Longevity is a "transferee," as that term is used in the UVTA.

248. Horizon is a "creditor," as that term is defined in the UVTA.

249. The UVTA prescribes certain indicia of "actual intent," which are otherwise referred to as "badges of fraud."

250. Courts in New Jersey balance these "badges of fraud" and the proper inquiry is whether the badges of fraud are present, not whether some of the badges are absent. Indeed, a confluence of several factors in one transaction generally provides conclusive evidence of an actual intent to defraud.

**1. Vestibula's Transfers to Mr. Conte Jr.**

251. Vestibula's transfers of at least $855,000 to Mr. Conte Jr. bear several badges of fraud.

252. First, by his own admission, Mr. Conte Jr. is an "insider" of Vestibula in that he unlawfully owns, operates, and controls the practice.

253. Although Mr. Conte Jr. is an "insider" of Vestibula, he is not entitled to lawfully share in *any* of the profits generated by Vestibula because to do so would be in violation of N.J.S.A. 14A:17-11. Accordingly, Mr. Conte Jr. never had a legal right or claim to the $855,000 that Vestibula transferred to him.

254. Second, Vestibula was threatened with suit by Horizon's counsel on June 30, 2021, but nonetheless transferred $550,000 to Mr. Conte Jr. on July 22, 2021.

255. Third, a component of Mr. Conte Jr.'s Chapter 11 bankruptcy plan includes Vestibula's unlawful transfer of $75,500 *per month* to fund Mr. Conte Jr.'s bankruptcy on a going-forward basis. Vestibula's obligation to transfer these proceeds to Mr. Conte Jr. to fund his bankruptcy occurred on or around September 14, 2021, a mere fifty (50) days *after* Horizon filed this action against Vestibula.

256. Fourth, the July 22, 2021 transfer from Vestibula to Mr. Conte Jr. in the amount of $550,000 was, upon information and belief, "substantially all" of Vestibula's assets.

257. Fifth, Vestibula's agreement to fund Mr. Conte Jr.'s bankruptcy in the face of this action from Horizon constitutes an effort by Vestibula to remove and/or conceal assets and place them beyond the reach of Horizon.

258. Sixth, since Mr. Conte Jr. is unable to legally own, operate, or control Vestibula, the value of the "consideration" he provided to Vestibula was *not* reasonably equivalent to the value of the assets Vestibula transferred to him.

**2. Vestibula's Transfers to Universal and Longevity**

259. Vestibula's transfer of $1,829,000.00 *each* to Universal and Longevity from its business TD Bank account also bear several badges of fraud.

260. First, the transfers to Universal and Longevity were to "insiders," as that term is defined in the UVTA, because Dr. Stephen Conte Sr. is the purported "owner" of Universal and Longevity and, therefore, they are "affiliates" of Vestibula.

261. Second, the transfer or obligation was hidden from Horizon even though Vestibula had an obligation to produce, but failed to do so, its financial records to Horizon pursuant to Judge Martini's October 20, 2021 Order expediting discovery into the issue of its ownership and control and in response to Horizon's discovery requests.

262. Third, Horizon filed its Amended Counterclaim against Vestibula, Universal and Dr. Stephen Conte in this Court seeking more than $4 million in damages for Vestibula's unlawful practice of medicine six (6) days before the transfers were effectuated. Similarly, Horizon filed its Adversary Complaint in the Bankruptcy Proceedings against Vestibula, Dr. Stephen Conte, Sr., and Mr. Conte Jr. one (1) day before the transfers were effectuated.

263. Fourth, upon effectuating these transfers, Vestibula was or became "insolvent," as that word is defined in the UVTA, because the $3,658,000.00 was transferred, concealed, or removed with intent to hinder, delay, or defraud Horizon, thereby making the transactions voidable as to Universal and Longevity. See N.J.S.A. 25:2-23.

264. Fifth, the transfers were of substantially all of Vestibula's assets because, immediately after the transfers were effectuated, Vestibula had a total of approximately $185,000 in *all* of its TD Bank accounts. Prior to these transfers, Vestibula had in excess of $4 million in all of its accounts.

265. Sixth, Vestibula clearly removed assets from its bank accounts in an effort to frustrate, hinder, delay, and defraud Horizon's collection efforts.

266. Seventh, Vestibula did not receive *any* consideration from Universal and/or Longevity in exchange for transfers of $1,829,000.00 each.

267. Vestibula's transfers of $1,829,000.00 each to Universal and Longevity are voidable under the UVTA.

268. Pursuant to N.J.S.A. 25:2-29(a)(3), Horizon also seeks an injunction against Vestibula's further disposition of the ill-gotten gains it received by submitting false and fraudulent claims to and receiving payment from Horizon for services rendered unlawfully or not rendered at all, as detailed herein. Indeed, under the now-confirmed Chapter 11 Plan, Vestibula intends to continue transferring its ill-gotten gains in the amount of $75,500 *per month* to fund Mr. Conte Jr.'s Bankruptcy Proceeding and to the detriment of Horizon. Moreover, Vestibula has already transferred $3,658,000.00 in an effort to frustrate Horizon's collection efforts.

269. Pursuant to N.J.S.A. 25:2-29(a)(3)(c), Horizon also seeks the imposition of a constructive trust over the funds Horizon paid to Vestibula because Vestibula has clearly engaged in numerous wrongful acts and has been unjustly enriched thereby, as detailed herein.

270. If Vestibula is not enjoined from any further transfers, any judgment obtained by Horizon in this matter against Vestibula would be, upon information and belief, rendered meaningless, unenforceable, and uncollectable. Accordingly, to preserve the status quo, the Court should enjoin Vestibula from making any further transfers to Mr. Conte Jr., Universal, Longevity, or otherwise.

**WHEREFORE**, Horizon demands judgment in its favor and the entry of relief pursuant to N.J.S.A. 25:2-29: (1) enjoining Vestibula's further dissipation of assets; (2) imposition of a constructive trust over the funds Horizon paid to Vestibula; (3) avoidance of Vestibula's transfers of $1,829,000.00 each to Universal and Longevity; and/or (4) any other relief the circumstances require.

## COUNT FOUR

## MONEY HAD AND RECEIVED AS TO VESTIBULA

271. Horizon repeats and incorporates herein by reference the allegations contained in paragraph 1 through 270 of this Counterclaim.

272. Horizon paid claims to Vestibula that it would not have paid but for Vestibula's wrongful conduct alleged herein.

273. Horizon paid these claims based upon Vestibula's misrepresentations and/or failure to disclose violations of the IFPA and/or the common law.

274. Due to Vestibula's fraud, it never obtained legal title to the funds paid by Horizon.

275. The amounts paid by Horizon to Vestibula should be returned to Horizon in equity and good conscience.

276. Moreover, Vestibula should be ordered to disgorge any and all profits it has realized from Horizon due to Vestibula's scheme to defraud articulated herein.

277. Finally, the Court should enjoin Vestibula from any further transfers and impose a constructive trust over the funds paid by Horizon to Vestibula because Vestibula's scheme to defraud articulated herein constitutes a "wrongful act" and Vestibula will be unjustly enriched if the funds belonging to Horizon in equity and good conscience are not returned.

**WHEREFORE**, Horizon demands judgment in its favor and an Order against Vestibula: (1) requiring the return of funds Horizon paid in reliance on the false and fraudulent claims for health insurance benefits Vestibula submitted, or caused to be submitted; (2) disgorgement of any and all profits Vestibula has realized from Horizon; (3) enjoining any further dissipation of Vestibula's assets; (4) imposing a constructive trust over the funds paid by Horizon to Vestibula; and (5) any other relief the circumstances require.

## COUNT FIVE

## INSURANCE FRAUD BY ST. IRENE

278. Horizon repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 277 of this Counterclaim.

279. St. Irene is a domestic New Jersey corporation with its principal place of business located in Paramus, New Jersey.

280. St. Irene's registered agent is Dr. Stephen Conte Sr. with his wife, Patricia Conte, acting as the corporation's President.

281. Upon information and belief, Dr. Stephen Conte Sr. and his wife, Patricia Conte, owned and operated St. Irene.

282. At all times material hereto, St. Irene was the record owner of 251 Rochelle Avenue, Rochelle Park, New Jersey, which was the epicenter of the scheme to defraud as it is the primary practice location and principal place of business of Open MRI, Vestibula, and Universal.

283. St. Irene was an instrumentality of the fraud perpetrated by Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann.

284. Upon information and belief, St. Irene assisted in and provided the necessary facilities that permitted Open MRI, Vestibula, Universal, Dr. Stephen

Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann to perpetrate their scheme to defraud Horizon.

285. With the express or implied permission of St. Irene, Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann were permitted to engage in a wide-ranging scheme to defraud Horizon and other health insurance payors.

286. Upon information and belief, St. Irene, as the record owner of their primary practice location, accepted remuneration from Open MRI, Vestibula, and/or Universal in exchange for their use of St. Irene's property.

287. St. Irene is a person or practitioner within the meaning of the IFPA and committed, participated in, assisted with, benefitted from, and failed to disclose the scheme to defraud Horizon in violation of the IFPA.

288. Upon information and belief, given the intertwined business and familial relationship between St. Irene, Open MRI, Vestibula, Universal, and Dr. Stephen Conte Sr., St. Irene knew of the fraud being perpetrated against Horizon and either consented to or acquiesced to the fraud being committed on its property.

289. Indeed, by virtue of Dr. Stephen Conte Sr.'s ownership interest in St. Irene and intimate knowledge of the scheme to defraud described herein, St. Irene knowingly benefitted from the fraud perpetrated on Horizon by Open MRI,

Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann in violation of the IFPA.

290. Despite its knowledge of the fraud, St. Irene failed to disclose it, which undeniably affected the Horizon members' right or entitlement to health insurance benefit payments. St. Irene's failure to disclose the fraud of Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann was in violation of the IFPA.

291. As a result of St. Irene's assistance in, benefit from, and failure to disclose the pattern of violations of the IFPA perpetrated against Horizon by Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann Horizon has suffered damages including, but not limited to, all amounts paid by Horizon as a result of the submission of false and fraudulent claims for reimbursement, costs of investigation, costs of suit, and attorneys' fees, all of which are specifically recognized as compensatory damages under the IFPA. See N.J.S.A. 17:33A-7.

292. As a result of Open MRI's, Vestibula's, Universal's, Dr. Stephen Conte Sr.'s, Dr. DeSimone's, Dr. Salvatore Conte's, Dr. Reiter's, Dr. Jain's, and Dr. Hermann's scheme to defraud and pattern of violations of the IFPA, Horizon is entitled to an award of treble damages under the IFPA. See N.J.S.A. 17:33A-7.

**WHEREFORE**, Horizon demands judgment in its favor and against St. Irene for all its damages, including costs of suit and attorneys' fees, for treble damages under the IFPA, and for such other relief as the Court may determine.

## COUNT SIX

## COMMON LAW FRAUD BY OPEN MRI, VESTIBULA, UNIVERSAL, INTEGRATED WELLNESS, DR. STEPHEN CONTE SR., MR. CONTE, JR., DR. DESIMONE, DR. SALVATORE CONTE, DR. REITER, DR. JAIN, AND DR. HERMANN

293. Horizon repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 292 of this Counterclaim.

294. Beginning in April 2020 and continuing through the present, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann entered into an unlawful scheme to defraud Horizon by submitting or causing to be submitted fraudulent health insurance claims for services that were not rendered or were rendered unlawfully and which contained material misrepresentations concerning their entitlement to payment of benefits from Horizon.

295. Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann actively concealed their fraud and failed to disclose information

which was material to the health insurance claims and affected their right to payment.

296. In submitting or causing to be submitted health insurance claims to Horizon for payment, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann intended that Horizon, in issuing payment for the services billed, rely on the claim forms and representations contained therein and Horizon reasonably relied on the representations in issuing payment on the claims.

297. Horizon reasonably relied on the fraudulent health insurance claims submitted by or caused to be submitted by Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann and paid in excess of $700,000 on false and fraudulent claims for services that were not rendered or were rendered unlawfully.

298. As a result of Open MRI's, Vestibula's, Universal's, Integrated Wellness's, Dr. Stephen Conte Sr.'s, Mr. Conte Jr.'s, Dr. DeSimone's, Dr. Salvatore Conte's, Dr. Reiter's, Dr. Jain's, and Dr. Hermann's fraud, Horizon has suffered harm and damages.

299. As described more fully above, the harm suffered by Horizon was actuated by bad faith and actual malice, that is, intentional wrongdoing. As such, Horizon is entitled to receive punitive damages pursuant to N.J.S.A. 2A:15-5.10.

**WHEREFORE**, Horizon demands judgment in its favor and against Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann jointly and severally, for all its damages, including costs of suit and attorneys' fees, and for punitive damages.

## COUNT SEVEN

## NEGLIGENT MISREPRESENTATION BY OPEN MRI, VESTIBULA, UNIVERSAL, INTEGRATED WELLNESS, DR. STEPHEN CONTE SR., MR. CONTE JR., DR. DESIMONE, DR. SALVATORE CONTE, DR. REITER, DR. JAIN, AND DR. HERMANN

300. Horizon repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 299 of this Counterclaim.

301. Beginning in April 2020 and continuing through the present, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann negligently submitted or caused to be submitted health insurance claims to Horizon for payment for services that were not rendered or were rendered unlawfully and

which contained material misrepresentations concerning their entitlement to benefits and failed to disclose information material to the claims for payment.

302. Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann had a duty and responsibility to verify the accuracy and completeness of information contained on claim forms they signed, certified as true, and submitted to Horizon for reimbursement.

303. Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann knew or should have known that the claims they submitted, or caused to be submitted, misrepresented the services rendered.

304. Horizon foreseeably and reasonably relied on Open MRI's, Vestibula's, Universal's, Integrated Wellness's, Dr. Stephen Conte Sr.'s, Mr. Conte Jr.'s, Dr. DeSimone's, Dr. Salvatore Conte's, Dr. Reiter's, Dr. Jain's, and Dr. Hermann's representations to its detriment in issuing payment on claims submitted or caused to be submitted by them.

305. The actions of Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann were the direct and proximate cause of damages to Horizon.

306. As a result of Open MRI's, Vestibula's, Universal's, Integrated Wellness's, Dr. Stephen Conte Sr.'s, Mr. Conte Jr.'s, Dr. DeSimone's, Dr. Salvatore Conte's, Dr. Reiter's, Dr. Jain's, and Dr. Hermann's negligence, Horizon has suffered damages, including but not limited to, amounts paid for services not rendered or rendered unlawfully.

307. As a result of Open MRI's, Vestibula's, Universal's, Integrated Wellness's, Dr. Stephen Conte Sr.'s, Mr. Conte Jr.'s, Dr. DeSimone's, Dr. Salvatore Conte's, Dr. Reiter's, Dr. Jain's, and Dr. Hermann's negligence, Horizon has suffered damages and irreparable harm.

**WHEREFORE**, Horizon demands judgment in its favor and against Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann for all its damages, including costs of suit and attorneys' fees.

## COUNT EIGHT

## UNJUST ENRICHMENT AND RESTITUTION BY OPEN MRI, VESTIBULA, UNIVERSAL, INTEGRATED WELLNESS, DR. STEPHEN CONTE SR., DR. DESIMONE, DR. SALVATORE CONTE, DR. REITER, DR. JAIN, AND DR. HERMANN

308. Horizon repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 307 of this Counterclaim.

309. As set forth above, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann engaged in a scheme or practice pursuant to which they improperly and fraudulently billed for services not rendered or rendered unlawfully and retained the ill-gotten gains obtained therefrom.

310. As part of this scheme and/or practice, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann negligently, carelessly, or intentionally submitted insurance claims for services which contained false, inaccurate, and incomplete statements which affected their right to payment.

311. Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann knew or should have known that the insurance claims for services contained false, inaccurate, and incomplete statements which affected their right to payment.

312. As a result of Open MRI's, Vestibula's, Universal's, Integrated Wellness's, Dr. Stephen Conte Sr.'s, Mr. Conte Jr.'s, Dr. DeSimone's, Dr. Salvatore Conte's, Dr. Reiter's, Dr. Jain's, and Dr. Hermann's improper billing, Horizon paid them in excess of $700,000 to which they were not entitled.

313. Horizon reasonably and foreseeably relied on the misrepresentations of Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann in issuing payment on insurance claims they submitted.

314. Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann were negligent and proximately caused damages to Horizon.

315. As a result of Open MRI's, Vestibula's, Universal's, Integrated Wellness's, Dr. Stephen Conte Sr.'s, Mr. Conte Jr., Dr. DeSimone's, Dr. Salvatore Conte's, Dr. Reiter's, Dr. Jain's, and Dr. Hermann's fraud and improper billing, they have been unjustly enriched.

316. The harm suffered by Horizon was actuated by bad faith and actual malice, that is, intentional wrongdoing. As such, Horizon is entitled to receive punitive damages pursuant to N.J.S.A. 2A:15-5.10.

**WHEREFORE**, Horizon demands judgment in its favor and against Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann for all its damages, including costs of suit and attorneys' fees.

## COUNT NINE

## AIDING AND ABETTING INSURANCE FRAUD BY OPEN MRI, VESTIBULA, UNIVERSAL, INTEGRATED WELLNESS, DR. STEPHEN CONTE SR., DR. DESIMONE, DR. SALVATORE CONTE, DR. REITER, DR. JAIN, AND DR. HERMANN

317. Horizon repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 316 of this Counterclaim.

318. Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann are each liable for the fraudulent and tortious conduct outlined herein, which caused harm to Horizon pursuant to Section 876 of the Restatement (Second) of Torts.

319. Specifically, and as detailed above, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann acted in concert with each other and in accordance with a common design for the purpose of defrauding Horizon.

320. Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann knew each other's conduct breached duties to Horizon and substantially assisted and/or encouraged each other's actions.

321. Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann gave substantial assistance and/or encouragement to each other in the pursuit of the fraud and tortious conduct and each of their own conduct, separately considered, constituted breach of duties to Horizon.

322. Horizon has been injured as a result.

**WHEREFORE**, Horizon demands judgment in its favor and against Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, and Dr. Jain for all its damages, including costs of suit and attorneys' fees, and for punitive damages.

## COUNT TEN

## CIVIL CONSPIRACY BY OPEN MRI, VESTIBULA, UNIVERSAL, INTEGRATED WELLNESS, DR. STEPHEN CONTE SR., MR. CONTE JR., DR. DESIMONE, DR. SALVATORE CONTE, DR. REITER, DR. JAIN, DR. HERMANN AND ST. IRENE

323. Horizon repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 322 of this Counterclaim.

324. As described above, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, Dr. Hermann, and St. Irene acted with a common purpose to unlawfully defraud Horizon.

325. As described in detail above, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, Dr. Hermann, and St. Irene have each committed overt acts in furtherance of the conspiracy.

326. Horizon has been injured as a result.

**WHEREFORE**, Horizon demands judgment in its favor and against Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, Dr. Hermann, and St. Irene for all its damages, including costs of suit and attorneys' fees, and for punitive damages.

## COUNT ELEVEN

## AIDING AND ABETTING THE COMMISSION OF INSURANCE FRAUD BY ST. IRENE

327. Horizon repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 327 of this Counterclaim.

328. Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann committed violations of the IFPA as set forth above.

329. Upon information and belief, St. Irene knew of the insurance being perpetrated by Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann.

330. Upon information and belief, St. Irene aided and abetted Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann by, among other things, allowing them to utilize St. Irene's property to perpetuate their scheme to defraud.

331. Upon information and belief, St. Irene participated in the scheme to defraud by benefitting from and failing to disclose Counterclaim-Defendants' scheme to defraud.

332. Upon information and belief, St. Irene knew that the actions of Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann constituted violations of the IFPA but nevertheless gave substantial assistance and/or encouragement to them.

333. Upon information and belief, St. Irene knew that Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann had an independent duty not to commit insurance fraud yet nevertheless gave substantial assistance and/or encouragement to them.

334. But for St. Irene's willingness to participate or assist in and/or acquiescence to Counterclaim-Defendants' scheme to defraud, the fraudulent acts described herein would not have occurred.

**WHEREFORE**, Horizon demands judgment in its favor and against St. Irene for all its damages, including costs of suit and attorneys' fees, and for punitive damages.

## COUNT TWELVE

## AIDING AND ABETTING THE COMMISSION OF COMMON LAW FRAUD BY ST. IRENE

335. Horizon repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 334 of this Counterclaim.

336. Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann committed common law fraud as set forth above.

337. Upon information and belief, St. Irene knew of the fraud being perpetrated by Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann.

338. Upon information and belief, St. Irene aided and abetted Counterclaim-Defendants' commission of common law fraud by, among other things, allowing them to utilize St. Irene's property to perpetuate their scheme to defraud.

339. Upon information and belief, St. Irene participated in the scheme to defraud by benefitting from and failing to disclose Counterclaim-Defendants' scheme to defraud.

340. Upon information and belief, St. Irene knew that the actions of Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann constituted common law fraud but nevertheless gave substantial assistance and/or encouragement to them.

341. Upon information and belief, St. Irene knew that Open MRI, Vestibula, Universal, Dr. Stephen Conte Sr., Mr. Conte Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann had an independent duty not to commit common law fraud yet nevertheless gave substantial assistance and/or encouragement to them.

342. But for St. Irene's willingness to participate or assist in and/or acquiescence to Counterclaim-Defendants' scheme to defraud, the fraudulent acts described herein would not have occurred.

**WHEREFORE**, Horizon demands judgment in its favor and against St. Irene for all its damages, including costs of suit and attorneys' fees, and for punitive damages.

**STRADLEY, RONON, STEVENS & YOUNG, LLP**
A Pennsylvania Limited Liability Partnership

By: */s/ Robert J. Norcia*
Adam J. Petitt, Esq. (020822008)
Robert J. Norcia, Esq. (165172015)
Cameron M. Redfern, Esq. (326462020)
457 Haddonfield Road, Suite 100
Cherry Hill, NJ 08002-2223
T: (215) 564-8130
F: (215) 564-8120
E: apetitt@stradley.com;
rnorcia@stradley.com;
credfern@stradley.com

*Attorneys for Defendant/Counterclaim-Plaintiff Horizon Blue Cross Blue Shield of New Jersey*

DATED: February 4, 2022



5454873