UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **OPEN MRI AND IMAGING OF RP VESTIBULAR DIAGNOSTICS, P.A.,**<br><br>Plaintiff,<br><br>v.<br><br>**HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,**<br><br>Defendant. | Civ. No. 21-10991 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.**

Plaintiff denominated as "Open MRI and Imaging of RP Vestibular Diagnostics, P.A." commenced this action against Horizon Blue Cross Blue Shield of New Jersey ("Horizon") for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, based on Horizon's alleged failure to pay insurance claims for COVID-19 rapid testing. *See* Compl., ECF No. 1.

Horizon filed an answer to the Complaint, along with a consolidated Counterclaim and Third-Party Complaint that Horizon later amended. *See* Answer, ECF No. 8. Horizon's operative pleading, which the Court refers to as the Second Amended Consolidated Counterclaim and Third-Party Complaint, asserts twelve counts for violations of the common law and the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1, *et seq.*, based on an alleged scheme to defraud Horizon. TP Compl., ECF No. 74. Horizon brings its claims against Plaintiff/Counterclaim Defendant "Open MRI and Imaging of RP Vestibular Diagnostics, P.A." and the following Third-Party Defendants: Open MRI and Imaging of Rochelle Park, P.A., Vestibula Diagnostics, P.A. d/b/a Vestibular Diagnostics, P.A., Universal Wellness Medical, Inc., Longevity Wellness, P.A., Integrated Wellness Medicine, LLC, St. Irene Realty Corp., Stephen J. Conte, DO, Stephen Conte, Jr., Eugene DeSimone, MD, Salvatore Conte, MD, Raymond Reiter, MD, Doney Jain, MD, and George Hermann, MD (collectively, the "Third-Party Defendants").

Presently before the Court is a motion brought by a subset of the Third-Party Defendants—Open MRI and Imaging of Rochelle Park, P.A., Vestibula Diagnostics, P.A. d/b/a Vestibular Diagnostics, P.A., Universal Wellness Medical, Inc., Longevity Wellness, P.A., St. Irene Realty Corp., Stephen J. Conte, DO, Stephen Conte, Jr., and Eugene DeSimone,

MD—to dismiss Horizon's Second Amended Consolidated Counterclaim and Third-Party Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 85. For the reasons set forth below, the motion is **DENIED**.

## I. BACKGROUND

Horizon's Second Amended Consolidated Counterclaim and Third-Party Complaint alleges the following facts, which are accepted as true for purposes of resolving this motion.

### A. The Parties

Horizon is an insurance company with its principal place of business in Newark, New Jersey. TP Compl. ¶¶ 11-12. It provides healthcare benefits for insured subscribers pursuant to a variety of healthcare plans and policies issued or administered throughout the state. *Id.* ¶ 11.

Open MRI and Imaging of Rochelle Park, P.A. ("Open MRI"), Vestibula Diagnostics, P.A. d/b/a Vestibular Diagnostics, P.A. ("Vestibula"), and Universal Wellness Medical, Inc. ("Universal") are medical practices all located at 251 Rochelle Avenue, Rochelle Park, New Jersey. *Id.* ¶¶ 2, 13, 15, 24. Horizon has named Open MRI and Vestibula as Third-Party Defendants because the primary Complaint in this matter merges these two separate legal entities into a single Plaintiff denominated as "Open MRI and Imaging of RP Vestibular Diagnostics, P.A." *Id.* ¶ 45.

Longevity Wellness, P.A. ("Longevity") is a medical practice located in Paramus, New Jersey. *Id.* ¶ 26.

St. Irene Realty Corp. ("St. Irene Realty") is a New Jersey corporation and the record owner of 251 Rochelle Avenue, the practice location of Open MRI, Vestibula, and Universal. *Id.* ¶ 41. St. Irene Realty's principal place of business in Paramus, New Jersey, is the home address of Stephen J. Conte, DO. *Id.* ¶ 40.

Stephen J. Conte, DO ("Dr. Stephen Conte, Sr.") is a physician licensed to practice in New Jersey. *Id.* ¶ 28. At the time relevant to this action, he owned and operated Open MRI, Universal, Longevity, and St. Irene Realty. *Id.* ¶ 30. He also owned and incorporated Vestibula, but transferred ownership of the practice to his son, Stephen J. Conte, Jr. ("Mr. Conte, Jr."), at some unspecified time. *Id.* ¶¶ 17-22. Mr. Conte, Jr., is not licensed to practice medicine in New Jersey or elsewhere. *Id.* ¶¶ 7, 23.

Integrated Wellness Medicine, LLC ("Integrated Wellness") is a medical practice located in Clifton, New Jersey. *Id.* ¶ 38. It was formed by and, at the time relevant to this action, operated by Salvatore Conte, MD ("Dr. Salvatore Conte") and Raymond Reiter, MD ("Dr. Reiter"). *Id.* ¶¶ 38-39.

Dr. Salvatore Conte, Dr. Reiter, Eugene DeSimone, MD ("Dr. DeSimone), Doney Jain, MD ("Dr. Jain"), and George Hermann, MD ("Dr. Hermann") are physicians licensed to practice in New Jersey. *Id.* ¶¶ 31, 33, 35-37. They, along with Dr. Stephen Conte, Sr., were identified as the "rendering providers" on allegedly false and fraudulent claims submitted to Horizon for services rendered to patients at Open MRI, Vestibula, Universal, and Integrated Wellness. *Id.* ¶¶ 29, 33, 35-37.

### B. The Alleged Scheme to Defraud Horizon

In April of 2020, as the novel COVID-19 virus spread throughout the United States, Open MRI and Vestibula began offering rapid COVID-19 tests to members of the public at their joint practice location at 251 Rochelle Avenue, Rochelle Park, New Jersey. *Id.* ¶ 64. A typical patient encounter at Open MRI and Vestibula for a rapid COVID-19 test involved the patient waiting in line outside the practice location, having their temperature taken by a staff member, answering a few brief "prescreen" questions from a physician about their symptoms and medical history, receiving a nasal swab, and then receiving the test results from a staff member shortly thereafter. *Id.* ¶ 65. If a patient tested positive, they were given a "guidance sheet" issued by the Centers for Disease Control and Prevention. *Id.* ¶ 66. Overall, these rapid test "appointments" at Open MRI and Vestibula, as reported by Horizon members, were very brief, taking no longer than five minutes and involved little to no interaction with a licensed physician. *Id.* ¶ 68. Open MRI and Vestibula charged patients $35 at the time of service and then submitted claims to Horizon for further payment. *Id.* ¶ 67.

To submit a health insurance claim, healthcare providers like Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte, Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann must complete standard billing forms. *Id.* ¶ 49. The billing forms require providers to use specific numeric codes that describe the services for which the provider seeks payment. *Id.* Federal regulations designate the standard code systems that providers use in order to ensure that health insurance claims are processed efficiently and consistently. *Id.* ¶¶ 50-51. In turn, insurance companies like Horizon rely on providers to input codes that most appropriately and accurately describe the services provided to patients so that the insurer can adjudicate claims and secure reimbursement pursuant to the patient's health benefits plan. *Id.* ¶ 52. Providers submitting insurance claims are therefore required to certify not only that he or she is licensed to legally render, and did personally render, the services being billed, but also that the claim submission is correctly coded and reflects charges actually incurred. *Id.* ¶¶ 53-55.

According to Horizon, from April of 2020 onward, Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte, Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann submitted insurance claims seeking grossly inflated billed charges for medical services that were performed unlawfully or not performed at all, and that were unnecessary or inappropriate to administering rapid COVID-19 tests. *Id.* ¶ 72.

### 1. Billing for Services Rendered Unlawfully

From April of 2020 through September of 2020, Open MRI and Vestibula were not certified as "Authorized Laboratories" under the Comprehensive Laboratory Improvement Act ("CLIA"), and thus were not permitted to administer rapid COVID-19 tests. *Id.* ¶ 127. From July of 2020 through November of 2020, Universal likewise lacked the appropriate CLIA certifications. *Id.* ¶ 128. Nonetheless, Open MRI, Vestibula, and Universal administered rapid COVID-19 tests to patients and then submitted claims to Horizon for reimbursement. *Id.* ¶ 129. Horizon ultimately paid Open MRI and Vestibula in excess of $60,000, and Universal in excess of $80,000, on these claims for services that were rendered unlawfully. *Id.* ¶¶ 131-132.

### 2. Billing for Services That Were Not Rendered

Each time Open MRI, Vestibula, Dr. Stephen Conte, Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann submitted a claim for a rapid COVID-19 test rendered on a Horizon member, they also billed for "specimen handling," which requires the sample collected for testing to be transferred from the provider's office to a laboratory. *Id.* ¶¶ 83-86. Rapid COVID-19 tests, however, do not require transfer of the patients' specimens to a laboratory for testing because they are "point of care tests" performed in the provider's office. *Id.* ¶ 87. Open MRI, Vestibula, Dr. Stephen Conte, Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann knowingly submitted claims for "specimen handling" services that never occurred and were unnecessary in administering rapid tests. *Id.* ¶ 90. Horizon collectively paid them in excess of $7,000 on these claims. *Id.* ¶ 91.

Additionally, each time Open MRI, Vestibula, Dr. Stephen Conte, Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann submitted a claim for a rapid COVID-19 test rendered on a Horizon member, they also billed for moderate- and high-level evaluation and management ("E&M") services. *Id.* ¶ 93. These moderate- and high-level E&M billing codes are to be used where a healthcare provider spends thirty to sixty minutes face-to-face with a patient, takes a detailed medical history and performs a detailed examination, and utilizes medical decision making of low, moderate, or high complexity. *Id.* ¶¶ 95-96. Despite the fact that Horizon members' minutes-long encounters at Open MRI and Vestibular for a rapid COVID-19 test involved only a temperature check, a few "prescreen" questions, and a nasal swab, Open MRI, Vestibula, Dr. Stephen Conte, Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann nonetheless billed Horizon for more significant E&M services that were not actually rendered. *Id.* ¶¶ 97-100, 103-104. Horizon collectively paid them in excess of $300,000 on these claims. *Id.* ¶¶ 105-106.

### 3. The Creation of Universal and Integrated Wellness to Circumvent Horizon's Pre-Payment Review

On October 1, 2020, based on its suspicion that Vestibula was billing for services not rendered and services rendered unlawfully, Horizon placed Vestibula on "pre-payment review." *Id.* ¶ 110. "Pre-payment review" required Vestibula to submit patients' medical records with claims for benefits so that Horizon could review and substantiate the coding of the services rendered and billed before paying the claims. *Id*. ¶ 111. On October 12, 2020, Universal, an entity recently incorporated by Dr. Stephen Conte, Sr., at the same principal place of business as Open MRI and Vestibula, began submitting backdated claims to Horizon seeking payment for rapid COVID-19 tests, along with specimen handling and moderate- and high-level E&M services that were rendered unlawfully or not rendered at all. *Id.* ¶¶ 112-114, 116-118. Horizon collectively paid Universal and the "rendering providers" Dr. Stephen Conte, Sr., Dr. DeSimone, and Dr. Jain in excess of $75,000 on these claims. *Id.* ¶ 119.

In a similar fashion, beginning on October 6, 2020, Integrated Wellness, an entity recently formed by Dr. Salvatore Conte and Dr. Reiter at an address in Clifton, New Jersey, began submitting to Horizon claims consistent with the above pattern. *Id.* ¶¶ 134, 136-142. Between October of 2020 through June of 2021, Horizon paid Integrated Wellness and the "rendering providers" Dr. Salvatore Conte, Dr. Reiter, and Dr. Hermann in excess of $200,000 on these claims. *Id.* ¶ 142.

### 4. Vestibula's Unlawful Corporate Structure

After Horizon filed its initial Counterclaim and Third-Party Complaint in this matter, it discovered that, contrary to publicly available corporate documents, Vestibula is not owned or controlled by Dr. Stephen Conte, Sr., but by his son, Mr. Conte, Jr. *Id.* ¶¶ 143-145. Mr. Conte, Jr., is not licensed to practice any form of medicine in the state of New Jersey or elsewhere. *Id.* ¶ 170. Horizon contends that Mr. Conte, Jr., and Vestibula unlawfully engaged in the practice of medicine and, consequently, Vestibula and the physicians employed there—Dr. Stephen Conte, Sr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Jain, Dr. Reiter, and Dr. Hermann—were not eligible to receive payment from Horizon on insurance claims. *Id.* ¶¶ 172-176. As a result of Vestibula's submission of claims while it lacked a proper ownership structure and was under the dominion and control of an unlicensed owner, Horizon paid in excess of $4,000,000 on claims for services that it contends were rendered unlawfully. *Id.* ¶¶ 178-182.

Horizon further discovered that Vestibula was engaged in a concerted effort to dissipate its assets by transferring funds to Mr. Conte, Jr., for use in paying off creditors in his ongoing Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the

District of New Jersey.[1] *Id.* ¶¶ 146, 183-188. As Mr. Conte, Jr., is not a licensed medical professional, Horizon maintains that he is not entitled to lawfully share in Vestibula's earnings or profits. *Id.* ¶ 184. Nonetheless, Vestibula transferred money to Mr. Conte, Jr.'s attorney on several occasions in the bankruptcy proceeding, and a component of Mr. Conte, Jr.'s Chapter 11 bankruptcy plan includes Vestibula's transfer of $75,500 per month to fund his bankruptcy on a going-forward basis. *Id.* ¶¶ 185-188, 255. Then, on September 30, 2021— six days after Horizon filed its First Amended Counterclaim and Third-Party Complaint in this matter, one day after Horizon filed its Adversary Complaint in the bankruptcy proceeding, and the same day that Horizon moved for a preliminary injunction before the Bankruptcy Court—Mr. Conte, Jr., withdrew $3,658,000 from Vestibula's business bank account and placed half the amount in Universal's business bank account and the other half in Longevity's business bank account, leaving only $20,000 in Vestibula's account. *Id.* ¶¶ 201-202.

### C. Horizon's Claims Against the Third-Party Defendants

Based on the foregoing facts, and in response to Plaintiff "Open MRI and Imaging of RP Vestibular Diagnostics, P.A." commencing the primary action, Horizon filed its Second Amended Consolidated Counterclaim and Third-Party Complaint. TP Compl., ECF No. 74. Horizon asserts twelve causes of action against the Third-Party Defendants:

Count One alleges, against Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte, Sr., Mr. Conte, Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann, violations of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1, *et seq.* (TP Compl. ¶¶ 218-231)

Count Two alleges, against Vestibula and Mr. Conte, Jr., violations of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1, *et seq.* (TP Compl. ¶¶ 232-241)

Count Three alleges, against Vestibula, Mr. Conte, Jr., Universal, and Longevity, violations of the New Jersey Uniform Voidable Transactions Act, N.J.S.A. 25:2-20, *et seq.* (TP Compl. ¶¶ 242-270)

Count Four, against Vestibula, is for money had and received (TP Compl. ¶¶ 271-277)

Count Five alleges, against St. Irene Realty, violations of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1, *et seq.* (TP Compl. ¶¶ 278-292)

Count Six alleges, against Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte, Sr., Mr. Conte, Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann, common law fraud (TP Compl. ¶¶ 293-299)

---

[1] On January 24, 2022, the Bankruptcy Court entered an Order modifying the automatic stay pursuant to 11 U.S.C. § 362 to permit Horizon to add Mr. Conte, Jr., as a third-party defendant in this action and fully pursue its claims against Mr. Conte, Jr., here. *See* Ex. 1, ECF No. 69-1.

Count Seven alleges, against Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte, Sr., Mr. Conte, Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann, negligent misrepresentation (TP Compl. ¶¶ 300-307)

Count Eight alleges, against Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte, Sr., Mr. Conte, Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann, unjust enrichment (TP Compl. ¶¶ 308-316)

Count Nine alleges, against Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte, Sr., Mr. Conte, Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann, aiding and abetting insurance fraud (TP Compl. ¶¶ 317-322)

Count Ten alleges, against Open MRI, Vestibula, Universal, Integrated Wellness, Dr. Stephen Conte, Sr., Mr. Conte, Jr., Dr. DeSimone, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, Dr. Hermann, and St. Irene Realty, civil conspiracy to commit fraud (TP Compl. ¶¶ 323-326)

Count Eleven alleges, against St. Irene Realty, aiding and abetting violations of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1, *et seq.* (TP Compl. ¶¶ 327-334)

Count Twelve alleges, against St. Irene Realty, aiding and abetting common law fraud (TP Compl. ¶¶ 335-342)

In response to Horizon's allegations, Integrated Wellness, Dr. Salvatore Conte, Dr. Reiter, Dr. Jain, and Dr. Hermann filed Answers. ECF Nos. 83, 84, 94. Open MRI, Vestibula, Universal, Longevity, Dr. Stephen Conte, Sr., Mr. Conte, Jr., Dr. DeSimone, and St. Irene Realty (collectively, "the Moving Third-Party Defendants") moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, as well as for lack of particularity pursuant to Rule 9(b). ECF No. 85. Horizon opposes the motion to dismiss. ECF No. 90. The Moving Third-Party Defendants did not file a reply.

## II.   JURISDICTION

The Court has subject matter jurisdiction over the primary dispute between Plaintiff "Open MRI and Imaging of RP Vestibular Diagnostics, P.A." and Horizon pursuant to 28 U.S.C. § 1331. As Horizon's state law claims in the Second Amended Consolidated Counterclaim and Third-Party Complaint form part of the same case or controversy, the Court exercises supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

### III. LEGAL STANDARD

#### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011).

In resolving a motion to dismiss under Rule 12(b)(6), the Court must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the complainant. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). The complaint's allegations need not be detailed, but they must contain sufficient factual matter to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Finally, while the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6), *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichik*, 605 F.3d 223, 230 (3d Cir. 2010).

#### B. Rule 9(b)

For claims of fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard, requiring a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A party "alleging fraud must therefore support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citation and quotation marks omitted). This standard ensures that a plaintiff alleges sufficient details to put the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original) (citation and quotations marks omitted). A court may grant a motion to dismiss pursuant to Rule 9(b) if the plaintiff fails to plead a claim of fraud with the requisite particularity. *Id.* at 200-02.

8

### IV. DISCUSSION

The Moving Third-Party Defendants—Open MRI, Vestibula, Universal, Longevity, Dr. Stephen Conte, Sr., Mr. Conte, Jr., Dr. DeSimone, and St. Irene Realty—primarily argue that Horizon has failed to plead the underlying fraudulent scheme with sufficient particularity. Mov. Br. at 8-9, 15-17, ECF No. 85-1. They argue that Horizon's allegations, as a whole, are conclusory statements that do not explain how the rendered medical services were fraudulent, miscoded, or illegal. *Id.* The Court disagrees and, given the Moving Third-Party Defendants' generalized argument, will confine its analysis to whether Horizon has adequately pleaded fraud under New Jersey common law and the New Jersey Insurance Fraud Prevention Act ("IFPA"), N.J.S.A. 17:33A-1, *et seq.*

To state a claim for common law fraud, a plaintiff must plead the following elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005).

A claim for common law fraud resembles a private action brought by an insurance company under the IFPA, but the two have notable differences. The IFPA, enacted by the New Jersey Legislature to "confront aggressively the problem of insurance fraud," N.J.S.A. 17:33A-2,

> prohibits the submission of insurance reimbursement claims when a party knows that the claim contains false or misleading information concerning any fact or thing material to the claim, and prohibits concealment or knowing failure to disclose an event that affects the eligibility for reimbursement or the amount of the reimbursement.

*Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 492-93 (D.N.J. 2018) (citing N.J.S.A. 17:33A-4); *see also Gov't Emps. Ins. Co. v. Elkholy*, No. 21-16255, 2022 WL 2373917, at *2 (D.N.J. June 30, 2022). The IFPA also prohibits knowingly assisting or conspiring with another to commit a violation, and benefitting, directly or indirectly, from the proceeds derived therefrom. N.J.S.A. 17:33A-4(b)-(c).

Because the IFPA "sweeps more broadly than common law fraud," *Meer*, 321 F. Supp. 3d at 492, plaintiffs are required to establish fewer elements when alleging fraud in violation of the statute. *Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1247 (N.J. 2006). Unlike common law fraud, "the IFPA does not require proof of reliance on the false statement or resultant damages, nor proof of intent to deceive." *Meer*, 321 F. Supp. 3d at 493 (quoting *Lincoln Nat'l Life Ins. Co. v. Schwarz*, No. 09-3361, 2010 WL 3283550, at *16 (D.N.J. Aug. 18, 2010)); *see Land*, 892 A.2d at 1247. A plaintiff need only establish that (1) defendant presented false or misleading information in connection with submitting an

insurance claim; (2) defendant knew the information was false or misleading; and (3) information was material to a claim for reimbursement under an insurance policy. *See LM Ins. Corp. v. All-Ply Roofing Co.*, No. 14-4723, 2019 WL 366554, at *12 (D.N.J. Jan. 30, 2019) (citing *Horizon Blue Cross Blue Shield of N.J. v. Transitions Recovery Program*, No. 10-3197, 2015 WL 8345537, at *4 (D.N.J. Dec. 8, 2015)) ("[A] plaintiff need only establish (1) knowledge, (2) falsity, and (3) materiality [to prove an IFPA violation].").

Here, Horizon has pleaded ample details of the who, what, when, where, and how of the underlying fraudulent scheme to state a claim for common law fraud and violations of the IFPA. Horizon alleges that in April of 2020, Third-Party Defendants began submitting insurance claims consistent with a specific pattern: they performed "very brief" COVID-19 rapid testing encounters, and yet knowingly submitted claims to, and received payment from, Horizon for specimen handling and moderate- and high-level E&M services which were not rendered. The Third-Party Defendants accomplished their scheme to defraud by identifying certain billing codes in their certified claims submissions to Horizon. The patient medical records that Horizon received from the Third-Party Defendants, however, did not support billing for the significantly longer and more complex medical services when billed in conjunction with a COVID-19 rapid test. To substantiate these allegations, Horizon has included in or attached to its pleading the following information: a detailed chart of the specific billing codes and their text, which describes the services and level of care that each code encompasses; a redacted snapshot of a one-page patient encounter form Vestibula submitted to Horizon in support of its claim seeking $900 for performing a COVID-19 rapid test; and Horizon's claims data identifying patients by initials, the dates of service, procedure codes, amount billed, amount paid, and the rendering provider for each allegedly fraudulent claim at issue in this case. Horizon then alleges that the Third-Party Defendants perpetuated their scheme by submitting backdated claims to Horizon under different entities' names and tax identification numbers in order to circumvent Horizon's pre-payment review process. These allegations, which Horizon's pleading dissects in great detail, are sufficiently particular to satisfy Rule 9(b)'s heightened pleading requirement and place the Third-Party Defendants on notice of the precise misconduct giving rise to Horizon's fraud-based claims.

In addition to advancing their general Rule 9(b) argument addressed above, the Moving Third-Party Defendants argue that Horizon has specifically failed to state a claim against St. Irene Realty in Counts Eleven and Twelve for aiding and abetting the alleged fraud. Mov. Br. at 9-10, ECF No. 85-1. Aiding and abetting liability is found in cases "where a plaintiff establishes the existence of an independent wrong, knowledge of that wrong[,] and substantial assistance on the part of the aider or abettor to effectuate that wrong." *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 782 (N.J. Super. Ct. App. Div. 2006). The Moving Third-Party Defendants maintain that Horizon has not pleaded facts showing that St. Irene Realty had any knowledge of the alleged fraudulent scheme or substantially assisted the other Third-Party Defendants in perpetuating it. Mov. Br. at 10, ECF No. 85-1.

10

At the time relevant to this action, St. Irene Realty was the record owner of 251 Rochelle Avenue, the practice location of Open MRI, Vestibula, and Universal. St. Irene Realty is owned by Dr. Conte, Sr., who simultaneously owned and operated Open MRI and Universal. Dr. Conte, Sr.'s home address in Paramus, New Jersey, is the same address listed as St. Irene Realty's principal place of business. Horizon alleges that St. Irene Realty assisted in and acquiesced to the Third-Party Defendants' conduct by allowing them to use the property at 251 Rochelle Avenue, by accepting remuneration for this conduct, and by failing to disclose their conduct in violation of the IFPA. The Moving Third-Party Defendants' argument that the aiding and abetting claims should be dismissed admittedly presents a close call; however, based on the intertwined business and familial relationships between St. Irene Realty, Open MRI, Vestibula, Universal, and Dr. Stephen Conte, Sr., and because Horizon has sufficiently pleaded the underlying fraudulent scheme, the Court declines to dismiss the aiding and abetting claims against St. Irene Realty at this time.

The Moving Third-Party Defendants next argue that Horizon's claims premised on Vestibula's improper corporate structure, and its claims premised on Vestibula and Universal lacking the appropriate CLIA certifications, must be dismissed because they are based on "factually inaccurate" allegations. Mov. Br. at 13-15, ECF No. 85-1. In making such an argument, and in relying on their own self-serving declaration by Dr. Stephen Conte, Sr., to challenge Horizon's allegations, the Moving Third-Party Defendants create disputes of fact inappropriate for resolution at the motion to dismiss stage. *See NJSR Surgical Ctr., LLC v. Horizon Blue Cross Blue Shield of N.J.*, 979 F. Supp. 2d 513, 524-25 (D.N.J. 2013) (finding factual issues to be inappropriate for resolution on a Rule 12(b)(6) motion to dismiss); *Salem Steel N.A. LLC v. KLT Automotive & Tubular Products Ltd.*, No. 12-3619, 2013 WL 12291653, at *1 (D.N.J. Dec. 2, 2013) (finding same). While the Third-Party Defendants may properly raise these arguments in a timely motion for summary judgment, the Court declines to address them here on a motion to dismiss.[2]

Finally, the Moving Third-Party Defendants make a generalized request for Horizon to formulate a more definite statement of its claims pursuant to Federal Rule of Civil Procedure 12(e). Mov. Br. at 10-11, ECF No. 85-1. A motion for a more definite statement under Rule 12(e) is only proper when a complaint is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736-37 (D.N.J. 2008). "In other words, the function of Rule 12(e) is not 'to provide greater particularization of information alleged in the complaint,' but to address an unintelligible complaint." *Beom Su Lee v. Karaoke*, No. 18-

---

[2] The Court also declines to address the Moving Third-Party Defendants' argument that Horizon's claims must be dismissed because Horizon does not have the authority to recoup funds it paid for insurance claims under self-funded plans. Mov. Br. at 12-13, ECF No. 85-1. This assertion goes beyond the allegations stated in Horizon's pleading. Moreover, the Moving Third-Party Defendants provide no basis for this assertion other than citing to Dr. Stephen Conte, Sr.'s declaration and referencing Horizon's "Frequently Asked Questions bulletin," which is not attached to the motion to dismiss but is nonetheless outside the universe of documents the Court may consider in resolving this motion.

8633, 2019 WL 2537932, at *11 (D.N.J. June 19, 2019) (quoting *MK Strategies*, 567 F. Supp. 2d at 737). A motion for a more definite statement is therefore unwarranted where, as here, the complainant has provided extensive factual support for its claims. *See Gov't Emps. Ins. Co. v. Koppel*, No. 21-3413, 2021 WL 3662364, at *4 n.5 (D.N.J. Aug. 17, 2021). Accordingly, the Moving Third-Party Defendants' request for a more definite statement from Horizon is denied. Their motion to dismiss is likewise denied in full.

## V.   CONCLUSION

For the reasons stated above, the Moving Third-Party Defendants' motion to dismiss Horizon's Second Amended Consolidated Counterclaim and Third-Party Complaint, ECF No. 85, is **DENIED**.

An appropriate Order shall follow.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date:  September 19, 2022**